# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-1554

KHALID FAIZ-MOHAMMAD,

*Petitioner*,

*v.*

JOHN D. ASHCROFT, United States
Attorney General,

*Respondent*.

_____

On Review of a Final Order of the
Immigration and Naturalization Service.
No. A28-852-265

_____

ARGUED FEBRUARY 24, 2004—DECIDED JANUARY 26, 2005

_____

Before POSNER, RIPPLE and EVANS, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Khalid Faiz-Mohammad, a native of
Pakistan, applied to the former Immigration and
Naturalization Service ("INS") for an adjustment of status
based on his marriage to a naturalized United States citizen.
Without fully adjudicating Mr. Faiz-Mohammad's appli-
cation, the INS reinstated a prior deportation order and
directed that Mr. Faiz-Mohammad be removed. Mr. Faiz-

Mohammad timely appealed this final order of removal. We now reverse and remand for further proceedings.

# I

# BACKGROUND

## A. Facts

Mr. Faiz-Mohammad first attempted to enter the United States in March 1988; he used a false passport bearing the name Rahimatullah Qamarden. Mr. Faiz-Mohammad was placed in exclusion proceedings and was ordered excluded pursuant to 8 U.S.C. § 1182, as an alien who had attempted to enter the United States by fraud. He was removed from the United States on May 7, 1988. According to the law in effect at the time, Mr. Faiz-Mohammad was not permitted to reenter the United States for a period of one year.

Mr. Faiz-Mohammad reentered the United States on June 24, 1989, as a visitor; he used the alias Jaffar Rajan. The following year, Mr. Faiz-Mohammad married Tabassum Faiz-Mohammad. At some point prior to institution of the present removal proceedings, Mrs. Faiz-Mohammad became a naturalized United States citizen.

On February 25, 1997, after Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"),[1] but before IIRIRA's April 1, 1997 effective date, Mr. Faiz-Mohammad filed an application for adjustment of status with the Chicago office of the INS. Included in his submissions were a Form I-485 application for adjustment of status, a Form I-130 petition for alien relative signed by Mrs. Faiz-Mohammad, and also a Form I-601 petition for

---

[1] Congress enacted IIRIRA on September 30, 1996.

waiver of inadmissibility. It was necessary for Mr. Faiz-Mohammad to file this last form because his prior fraudulent conduct rendered him ineligible for adjustment of status absent a waiver. *See* 8 U.S.C. §§ 1182(a)(6)(C)(i) & 1255(a).

The INS District Director denied Mr. Faiz-Mohammad's I-601 waiver petition on the ground that Mr. Faiz-Mohammad "had failed to establish that extreme hardship would be imposed on a qualifying relative." A.R. 22. Mr. Faiz-Mohammad appealed this decision to the Administrative Appeals Office ("AAO") of the INS.

The AAO rejected Mr. Faiz-Mohammad's appeal, ordered the District Director's decision withdrawn and remanded the case to the District Director for further proceedings. The AAO noted that IIRIRA had increased the waiting period for applying for re-admission from one year to five years. Because Mr. Faiz-Mohammad reentered the United States less than five years after his initial exclusion, he was required to seek permission to reenter from the Attorney General. Furthermore, although his failure to seek permission was waivable, Mr. Faiz-Mohammad had not sought such a waiver (Form I-212), and this waiver must be adjudicated prior to any consideration of Mr. Faiz-Mohammad's Form I-601.

In compliance with this directive, Mr. Faiz-Mohammad filed an I-212 waiver in February 2002. One year later, the District Director denied Mr. Faiz-Mohammad's Form I-212 waiver application on the ground that Mr. Faiz-Mohammad had "shown a blatant disregard for the immigration laws" and had "attempted to defraud the United States Government." A.R. 51.

The day following the District Director's denial of Mr. Faiz-Mohammad's I-212 waiver, the INS issued, pur-

suant to 8 U.S.C. § 1231(a)(5),[2] a Form I-871 notice of intent to reinstate a prior order of deportation, specifically the order that resulted in Mr. Faiz-Mohammad's May 7, 1988 departure from the United States. The form advised Mr. Faiz-Mohammad of his right to make a written or oral statement, which Mr. Faiz-Mohammad refused. Mr. Faiz-Mohammad also refused to sign the form. The INS then re-instated the prior order. This petition for review followed.

## II

## DISCUSSION

Mr. Faiz-Mohammad's sole argument on appeal is that IIRIRA's reinstatement provision, 8 U.S.C. § 1231(a)(5), which became effective on April 1, 1997, may not be applied retroactively to aliens who reentered the United States and applied for discretionary relief prior to IIRIRA's effective date. The retroactivity of a statutory provision is a question of law that we review de novo. *See Arevalo v. Ashcroft*, 344 F.3d 1, 10 (1st Cir. 2003).

---

[2]  8 U.S.C. § 1231(a)(5) provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

Although we refer to this provision as 8 U.S.C. § 1231(a)(5), opinions of other courts cited herein may refer to this provision either as IIRIRA § 305(a)(5) or Immigration and Nationality Act ("INA") § 241(a)(5).

**A.  *Landgraf* Analysis**

To determine whether a particular statute—or provision of a statute—is retroactive, we must follow the guidelines set forth by the Supreme Court in *Landgraf v. USI Films Products*, 511 U.S. 244 (1994). *Landgraf* established a two-part inquiry to determine whether a statute is retroactive. First, the court must discern whether Congress has spoken to whether the statute should have retroactive effect.[3] "In answering this question, courts should employ the customary rules of statutory construction, assaying the language of the statute itself and then considering its structure and purpose." *Arevalo*, 344 F.3d at 10 (citing *Lindh v. Murphy*, 521 U.S. 320, 336 (1997)). If the statute is silent regarding whether a specific provision is retroactive, the court next must consider whether retroactive application of the statute "would impair rights a party possessed when he acted, [would] increase a party's liability for past conduct, or [would] impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280.

**1.  *Landgraf*'s First Inquiry**

With respect to 8 U.S.C. § 1231(a)(5), Mr. Faiz-Mohammad maintains that Congress did not intend for the provision to apply to conduct that occurred prior to the passage (or effective date) of IIRIRA. His argument tracks closely the reasoning of the Ninth and Sixth Circuits in *Castro-Cortez v. INS*, 239 F.3d 1037 (9th Cir. 2001), and *Bejjani v. INS*, 271

---

[3]  *See Landgraf v. USI Films Prods.*, 511 U.S. 244, 257 (1994) (stating that the Court's first task was to discern whether the "statutory text" manifests congressional intent to apply the act retroactively).

F.3d 670 (6th Cir. 2002), respectively. Consequently, we look first to these cases to inform our discussion.

In *Castro-Cortez*, the Ninth Circuit identified three reasons—grounded in the statutory language—that evidenced Congress' clear intent that § 1231(a)(5) should not be applied retroactively "to aliens whose reentry occurred prior to its enactment." *Castro-Cortez*, 239 F.3d at 1051. First, the Ninth Circuit noted, "[w]hen Congress in 1996 rewrote the provision and codified it at INA § 241(a)(5), rather than modifying the retroactivity language to specify the effective date of IIRIRA, or even simply leaving the retroactivity language as it was . . . it did the opposite. It eliminated the retroactivity language completely." *Id.*[4] The Ninth Circuit

---

[4]  Prior to the passage of IIRIRA, the reinstatement provision was located at 8 U.S.C. § 1252(f), INA § 242(f), and stated as follows:

> (f) Unlawful reentry
>
>    Should the Attorney General find that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, *whether before or after June 27, 1952*, on any ground described in any of the paragraphs enumerated in subsection (e) of this section, the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry. For the purposes of subsection (e) of this section the date on which the finding is made that such reinstatement is appropriate shall be deemed the date of the final order of deportation.

8 U.S.C. § 1252(f) (1996) (emphasis added). As indicated, the former reinstatement provision contained a clear statement of retroactivity.

The presence, or absence, of retroactivity language is not the only difference between the two provisions. In *Ojeda-Terrazas v.*

(continued...)

believed that the decision "to remove the retroactivity language from this part of the statute provide[d] strong support for the conclusion that [Congress] did not intend that the revised provision be applied to reentries occurring before the date of the statute's enactment." *Id.* The Ninth Circuit's second reason for concluding that § 1231(a)(5) should not be applied retroactively was that, in several other sections of IIRIRA, Congress explicitly "indicated that those sections would apply to pre-enactment conduct"; that Congress failed to do so with respect to § 1231(a)(5) "supports the view, by negative implication, that § 241(a)(5) does not retroactively apply to aliens" who reentered after

---

[4] (...continued)

*Ashcroft*, 290 F.3d 292 (5th Cir. 2002), the Fifth Circuit identified three other key differences between the former and current reinstatement provisions:

1. Section 241(a)(5) extends the reinstatement procedures to those aliens, like Ojeda-Terrazas, whose initial removals were based upon entry without inspection. Under § 242(f), reinstatement was only available for those aliens whose previous order of deportation was based on one of the enumerated grounds (which did not include lack of inspection). Therefore, under the old statute, Ojeda-Terrazas would have been entitled to a new deportation procedure rather than being limited to the reinstatement procedure.

2. Section 241(a)(5) does not allow judicial review of the underlying previous removal order, as discussed above. Section 242(f), however, allowed the alien to attack the merits of a previous removal order.

3. The regulations implementing § 241(a)(5) allow an immigration officer to determine . . . whether reinstatement is proper. Under § 242(f), an immigration judge made the determination.

*Id.* at 296.

IIRIRA was enacted. *Id.* Finally, the Ninth Circuit noted that "congressional silence is instructive." *Id.* at 1052. Because "Congress is deemed to enact legislation with *Landgraf*'s 'default rule' in mind," "silence provides useful evidence as to intent for the first step of *Landgraf*'s two-part inquiry." *Id.* According to the Ninth Circuit, these statutory bases—taken together—evidenced Congress' clear intent that § 1231(a)(5) should not be applied retroactively.[5]

In reaching the same conclusion, the Sixth Circuit not only relied upon some of the reasons articulated above, it also was influenced by the fact that, in enacting IIRIRA, Congress "considered and rejected new language which would have applied the new reinstatement provision to illegal reentries which occurred before the date of enactment." *Bejjani*, 271 F.3d at 685. It concluded:

> Congress is presumed to be familiar with the judicial presumption against retroactive application, and thus Congress must explicitly provide for such. In the case of the INA's reinstatement provision, Congress eliminated retroactive language from the prior version, rejected a proposed version of the reinstatement provision which included retroactive language, and expressly provided the temporal scope for several provisions within Title III. Viewed in light of the presumption against retroactivity, Congress clearly did not intend for § 241(a)(5) to be applied to reentries which occurred prior to its effective date.

*Id.* at 687.

However, with the exception of the Ninth and Sixth

---

[5]   Consequently, the Ninth Circuit had no reason to engage in the second part of the *Landgraf* analysis.

Circuits, every other circuit that has considered the retroactivity of § 1231(a)(5) has held that there is no clear indication of Congress' intent regarding the provision's retroactive effect. *See Sarmiento Cisneros v. United States Attorney General*, 381 F.3d 1277 (11th Cir. 2004); *Arevalo*, 344 F.3d 1; *Avila-Macias v. Ashcroft*, 328 F.3d 108 (3d Cir. 2003); *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292 (5th Cir. 2002); *Alvarez-Portillo v. Ashcroft*, 280 F.3d 858 (8th Cir. 2002); *Velasquez-Gabriel v. Crocetti*, 263 F.3d 102 (4th Cir. 2001). Indeed, evaluating the same statutory arguments presented to, and accepted by, the Sixth and Ninth Circuits, the Third Circuit has concluded that "[w]hat is clear is that Congress' intent with regard to the temporal reach of Section 305(a)(5) of IIRIRA is *not* clear." *Avila-Macias*, 328 F.3d at 114 (emphasis in original). For instance, with respect to the lack of retroactivity language in § 1231(a)(5) compared to its predecessor, 8 U.S.C. § 1252(f) (repealed), the Eleventh Circuit has held that, although this absence lends some weight to the argument that § 1231(a)(5) should not be applied retroactively, "the silence with which the retroactivity language was replaced does not come close to being a clear statement of congressional intent." *Sarmiento Cisneros*, 381 F.3d at 1282; *see also Avila-Macias*, 328 F.3d at 113 (holding that the omission of retroactivity language "does not constitute an express mandate regarding the statute's temporal reach").

Other circuits similarly have rejected the "negative implication" argument accepted by the Ninth Circuit. According to the Third Circuit, "[t]he 'negative implication' argument fails because IIRIRA also contains sections in which Congress specified that the section did *not* apply to pre-enactment conduct." *Avila-Macias*, 328 F.3d at 113; *see also Arevalo*, 344 F.3d at 13 ("The problem is that many other sections of the IIRIRA unequivocally state that they will apply only prospectively . . . . Thus, the negative implication argument

could just as easily run the other direction.").

Finally, other courts have not found compelling the argument that, "because Congress enacts legislation with the *Landgraf* rule in mind, where it is silent it can be presumed that it did not intend for it to be applied retrospectively." *Avila-Macias*, 328 F.3d at 114. The Third Circuit explained that "[t]his argument fails as well because it could just as easily be argued that Congress remained silent in the expectation that courts would proceed to the second step of the *Landgraf* analysis, determine whether the provision would have a retroactive effect and, if it did, only then decline to apply it retrospectively." *Id.*; *see also Sarmiento Cisneros*, 381 F.3d at 1282-83 (quoting same).

There is no question that some statutory evidence points to the conclusion reached by the Ninth and Sixth Circuits that Congress may not have desired § 1231(a)(5) to be applied retroactively. However, we do not believe that this evidence is sufficient to meet the first prong of the *Landgraf* test. The Supreme Court has explained that "[t]he standard for finding such unambiguous direction is a demanding one. '[C]ases where this Court has found truly "retroactive" effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation.' " *INS v. St. Cyr*, 533 U.S. 289, 316-17 (2001) (quoting *Lindh*, 521 U.S. at 328 n.4). There is no *clear* indication in the statutory language that reveals whether Congress intended § 1231 to apply retroactively, much less evidence *so clear* as to lead to only one conclusion with respect to congressional intent as to the retroactivity of § 1231(a)(5).

As the majority of the circuits have noted, there are valid arguments on both sides of the retroactivity issue. We believe that the majority of circuits have taken the approach most consistent with the Supreme Court's view. We there-

fore hold that Congress did not evidence a clear intent with respect to whether § 1231(a)(5) should be applied retroactively to those who had reentered the country and had applied for discretionary relief prior to IIRIRA's effective date. We therefore must proceed to the second step of the *Landgraf* analysis.

### 2. *Landgraf*'s Second Inquiry

In the second step of the *Landgraf* analysis, this court must

> assess whether the operation of section 241(a)(5) in the instant case would impose new burdens or attach new legal consequences to the petitioner's illegal reentry and-or her pending application for adjustment of status. This assessment depends on whether execution of the reinstatement order "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability" to the petitioner's actions in a way that offends the fundamental principles of fair notice and reasonable expectation.

*Arevalo*, 344 F.3d at 13 (quoting *Landgraf*, 511 U.S. at 280).

The Supreme Court recently had occasion to apply the second part of the *Landgraf* test to a provision of IIRIRA in *INS v. St. Cyr*, 533 U.S. 289. At issue in *St. Cyr* was the retroactivity of IIRIRA's bar to discretionary relief for those who had been convicted of certain crimes. The prior statute did not impose a bar based on the type of crime alone, but also on the length of sentence; it barred discretionary relief only to individuals who had committed an aggravated felony and served a term of at least five years. Prior to the enactment of IIRIRA, St. Cyr had pleaded guilty to a drug-related crime. Later, when deportation proceedings were

instituted against St. Cyr, the Attorney General claimed that discretionary relief was not available to the petitioner because he had been convicted of a crime for which IIRIRA barred discretionary relief. The Supreme Court held that this provision of IIRIRA could not be applied retroactively to the petitioner:

> IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly " 'attaches a new disability, in respect to transactions or considerations already past.' " [*Landgraf*, 511 U.S. at 269.] Plea agreements involve a *quid pro quo* between a criminal defendant and the government . . . . Given the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer instead of proceed to trial.

*Id.* at 321-22 (citations and footnotes omitted). Furthermore, the Court noted that

> the fact that § 212(c) relief is discretionary does not affect the propriety of our conclusion. *There is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation.* Prior to AEDPA and IIRIRA, aliens like St. Cyr had a significant likelihood of receiving § 212(c) relief. Because respondent, and other aliens like him, almost certainly relied upon that likelihood in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and serious retroactive effect.

*Id.* at 325 (emphasis added; citations and footnotes omitted).

   Courts of appeals considering whether § 1231(a)(5) has an impermissible retroactive effect have looked to *St. Cyr* for guidance. Their analyses are instructive.

   In *Velasquez-Gabriel*, 263 F.3d 102, the petitioner reentered the country illegally and married a United States citizen in February 1996. In November 1997, after IIRIRA's passage (September 30, 1996) and effective date (April 1, 1997), he applied for an adjustment of status based on his marriage to a United States citizen. The Fourth Circuit, relying on *St. Cyr*, rejected the petitioner's claim that IIRIRA's bar to discretionary relief should not be applied to him because he reentered the country and married his wife prior to IIRIRA's enactment:

> Ultimately, Velasquez-Gabriel's case differs critically from *St. Cyr* . . . . Velasquez-Gabriel has shown neither a reasonable likelihood of success under pre-IIRIRA law nor a detrimental reliance on pre-IIRIRA law. . . . Velasquez-Gabriel's sole reliance argument is that he and his wife "relied to their detriment on petitioner's ability to adjust status in the United States when they were married, and may have chosen not to get married but proceed on a fiancee (K-1 visa) or may not have married at all." Brief of Petitioner at 23. This does not constitute detrimental reliance for purposes of assessing the retroactive effect of § 241(a)(5). In contrast to the aliens in *St. Cyr* and *Tasios* [*v. Reno*, 204 F.3d 544 (4th Cir. 2000)], Velasquez-Gabriel posits no way in which his marriage in "reliance" on preexisting law weakened his *immigration status* under the new law or hurt his chances of remaining in this country. . . . Accordingly, even if he could demonstrate a significant likelihood of receiving the relief he sought under the old law, he offers no "detrimental reliance" of the sort which played

such a critical role in the *St. Cyr* and *Tasios* holdings.

*Velasquez-Gabriel*, 263 F.3d at 108-09 (emphasis in original). Despite the difference between Velasquez-Gabriel and St. Cyr, the Fourth Circuit ultimately did not rest its decision on Velasquez-Gabriel's lack of reliance. It explained:

> That Velasquez-Gabriel did not detrimentally rely on prior law may not, however, foreclose a claim that § 241(a)(5) nonetheless operates retroactively. See *Hughes Aircraft Co. v. United States*, 520 U.S. 939 (1997) (holding that the amended False Claims Act operated retroactively without discussing whether any party detrimentally relied on previous law). But we need not decide that question because there is a far simpler reason compelling our conclusion that the application of § 241(a)(5) is not impermissibly retroactive in this case: not until well after § 241(a)(5) took effect did Velasquez-Gabriel apply to adjust his status or did his wife file for a visa petition on his behalf. In order to obtain an adjustment of status, an application must have been filed and an immigrant visa must be immediately available to the applicant, 8 U.S.C. § 1255(a)(3) (Supp. V 1999); Velasquez-Gabriel did not attempt to meet either of these requirements until *after* the effective date of § 241(a)(5).
>
> . . . .
>
>   Accordingly, Velasquez-Gabriel's failure to apply to adjust his resident status before the new law took effect fatally undermines his contention that § 241(a)(5)'s application to him "attaches new legal consequences to events completed before its enactment."

*Id.* at 109-10 (emphasis in original; citations omitted).[6]

The Eighth Circuit addressed a very similar factual situation in *Alvarez-Portillo*, 280 F.3d 858. In that case, an alien reentered the country illegally in 1993. In November 1996, after IIRIRA's passage, he married a United States citizen. Nearly five years later—and long after IIRIRA's 1997 effective date, the petitioner applied for an adjustment of status. In determining whether § 1231(a)(5) could be applied retroactively to the petitioner, the Eighth Circuit disagreed with the Fourth Circuit's analysis:

> In *Velasquez-Gabriel v. Crocetti*, . . . the Fourth Circuit concluded that § 241(a)(5) had no impermissible retroactive effect because the illegal reentrant could have applied for adjustment of status before IIRIRA's enactment, and therefore § 241(a)(5) did not attach new legal

---

[6] More recently in *Olatunji v. Ashcroft*, 387 F.3d 383, 394 (4th Cir. 2004), the Fourth Circuit made clear that subjective reliance on prior law did not factor into its retroactivity analysis:

Whether the particular petitioner did or did not subjectively rely upon the prior statute or scheme has nothing whatever to do with Congress' intent . . . . It is one thing to indulge the supportable presumption that Congress intends its enactments not to operate retroactively; it is another altogether to indulge the quite different, and unsupported and unsupportable, presumption that Congress so intends, but only where the particular petitioning party can prove that he subjectively relied on the prior statute to his detriment. In other words, where Congress has apparently given no thought to the question of retroactivity whatever, there is no basis for inferring that Congress' intent was any more nuanced than that statutes should not be held to apply retroactively. Anything more, in the face of complete congressional silence, is nothing but judicial legislation.

consequences to events completed before its enactment. We disagree. *Hughes Aircraft* held that the elimination of a substantive defense, without more, "attaches new legal consequences" to events completed prior to enactment that would give rise to liability under the new statute. That is precisely the effect of changing the law to provide that an illegal reentrant in a reinstatement proceeding under § 241(a)(5) "may not apply for any relief under this chapter." Under prior law, Alvarez-Portillo had a reasonable expectation he could either file for a discretionary adjustment of status, or wait and seek the adjustment as a defense to a later deportation proceeding. He chose to wait, and § 241(a)(5) as applied by the INS has now deprived him of that defense. To this extent, we conclude the statute had an impermissible retroactive effect on his reinstatement and removal proceeding.

*Alvarez-Portillo*, 280 F.3d at 867. Thus, the Eighth Circuit concluded that, because Alvarez-Portillo had reentered the United States and married a United States citizen prior to IIRIRA's effective date, Alvarez-Portillo was eligible, as of that date, for an adjustment of status. Consequently, § 1231(a)(5) could not operate retroactively to deprive him of the right to apply for that discretionary relief.

The Fifth Circuit was the next to consider the retroactive effect of § 1231(a)(5); however, it did so under factual circumstances different from those set forth above. *See Ojeda-Terrazas*, 290 F.3d 292. In *Ojeda-Terrazas*, the petitioner, a citizen of Mexico, had entered the United States illegally in 1984 and was deported that same year. He illegally reentered the United States in 1991. In 2001, the INS apprehended him and served him with a notice of intent to reinstate the prior deportation order. At the time that Ojeda-Terrazas was served with the reinstatement notice, he apparently had

not submitted an application for adjustment of status.[7] Consequently, if § 1231(a)(5) were applied retroactively to the petitioner, it would not affect any pending applications for relief; instead, it would affect only the way in which his deportation was adjudicated, namely without a hearing before an Immigration Judge ("IJ"). *See supra* notes 2 and 3. The Fifth Circuit determined that the mere loss of the procedural guarantee of a hearing before an IJ did not upset an alien's rights in such a way as to prevent § 1231(a)(5) from being applied retroactively:

> In this case, Ojeda-Terrazas was denied a hearing before an immigration judge, to which he was entitled under pre-IIRIRA law. Instead, an immigration officer made all of the predicate findings necessary to reinstate his prior deportation order. Unlike the alien who entered a plea agreement in *St. Cyr*, however, Ojeda-Terrazas had no reasonable expectation of having a hearing before an immigration judge rather than an INS official when he illegally reentered the United States in 1991. As Judge Fernandez states in his thoughtful dissent in *Castro-Cortez v. INS*, § 241(a)(5) "does not deal with any vested rights or settled expectations arising out of the alien's wrongdoing. Nor does it impose any new duties or new liabilities." We conclude, therefore, that § 241(a)(5) does not have an impermissible retroactive effect as applied to Ojeda-Terrazas. Accordingly, we hold that the INS properly applied § 241(a)(5) to Ojeda-Terrazas.

---

[7] The case is completely silent on the subject of adjustment of status. Therefore, it is not clear whether Ojeda-Terrazas was ineligible for an adjustment of status or whether he was eligible for this type of relief, but simply had failed to apply for it.

*Id.* at 301-02 (footnotes omitted).[8] Thus, according to the Fifth Circuit, the fact that § 1231(a)(5) deprived a petitioner of a removal hearing before an IJ did not disturb the type of settled expectations that rendered § 1231(a)(5) impermissibly retroactive.[9]

Finally, the First Circuit, in a case very similar to that of Mr. Faiz-Mohammad, determined that § 1231(a)(5) could

---

[8]   *See also Avila-Macias v. Ashcroft*, 328 F.3d 108, 114 (3d Cir. 2003). In that case, there was no evidence that the alien either reentered the country prior to IIRIRA's effective date or that he applied for an adjustment of status at any time:

> Avila-Macias claims that applying these new rules to him would be impermissibly retroactive because he "had no notice, before leaving the United States, of the consequences of an illegal reentry." Brief at 18. If he had reentered prior to the effective date of IIRIRA, he could at least plausibly argue that he did so believing (1) that he would be entitled to a hearing at which he could contest the legality of his underlying deportation order and (2) that he would be entitled to apply for discretionary relief. He does not argue that he reentered before IIRIRA's effective date, however. Applying IIRIRA to him—an alien who was deported prior to its effective date, but who reentered afterwards—does not have an impermissible retroactive effect because the consequences of an illegal reentry at the time that he reentered are the consequences he faces now.

[9]   *Accord Lattab v. Ashcroft*, 384 F.3d 8, 15 (1st Cir. 2004) ("[T]he only consequence that IIRIRA added to the petitioner's illegal reentry was procedural: he was subject to having his prior deportation order peremptorily reinstated and was no longer entitled to a hearing before that reinstatement. That consequence is insufficient to derail application of the new statute. As a general rule, the application of new procedural mechanisms to the adjudication of past conduct is not impermissibly retroactive.").

not be applied retroactively to the petitioner. In *Arevalo*, 344 F.3d 1, the petitioner illegally reentered the United States in 1990. In August 1990, the petitioner's father, a legal permanent resident, filed a visa petition on her behalf, which was approved. Subsequently, in March of 1996, Arevalo applied for an adjustment of status. Six years later, the INS notified Arevalo that it would not entertain her application. The INS subsequently invoked § 1231(a)(5) to resurrect her prior deportation order and detained Arevalo pending removal. The First Circuit concluded that applying § 1231(a)(5) to Arevalo would have an impermissible retroactive effect. It explained:

> The INS objects that, unlike the petitioner in *St. Cyr*, the petitioner here can show neither a cognizable reliance interest in this right nor a settled expectation based on it. . . . We think that the INS circumscribes the enceinture of relevant interests too grudgingly.

> First, the array of pertinent interests listed in *Landgraf*, *Hughes Aircraft*, and other influential precedents is not exhaustive but merely illustration by synecdoche. Such listings "simply describe[ ] several 'sufficient,' as opposed to 'necessary,' conditions for finding retroactivity." *St. Cyr*, 533 U.S. at 320 n.46. Second, the presumption against statutory retroactivity is not restricted to cases involving vested rights. Third, and most important, the petitioner in this case applied for adjustment of status before April 1, 1997—a fact that distinguishes her in a material way from the mine run of persons who appeal from the reinstatement of previous removal orders. *See Velasquez-Gabriel*, 263 F.3d at 109-10 (noting that no application for status adjustment had been made before IIRIRA's effective date despite more than adequate time to do so) . . . . In the latter genus of cases, it is not possible to complain that section 241(a)(5) appends new

legal consequences to an event (the filing of an application for discretionary relief) occurring *before* its effective date. *See Velasquez-Gabriel*, 263 F.3d at 110. This is a salient distinction because applications for discretionary relief, once made, often become a source of expectation and even reliance.

. . . . The petitioner already had filed for relief when Congress amended the statute. Discarding her application now would deprive her both of a right that she once had and of the reasonable expectation that she would have the opportunity to convince the Attorney General to grant her relief. As the Supreme Court recently stated, "[t]here is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." *St. Cyr*, 533 U.S. at 325.

*Id.* at 14-15 (emphasis in original; citations omitted). Thus, because Arevalo applied for discretionary relief prior to IIRIRA's effective date, she had a legitimate expectation that her application would be considered by the Attorney General. Applying § 1231(a)(5) to Arevalo would upset that legitimate expectation; consequently, applying § 1231(a)(5) to the petitioner would have an impermissible retroactive effect.

## B. Application

Although the factual circumstances of each of these cases differ from one another and from that of Mr. Faiz-Mohammad, the courts' approaches to the retroactivity question is similar. The courts have looked to whether § 1231(a)(5) disturbs the petitioner's substantive rights or expectations. When retroactive application has affected only the way in which a

petitioner's deportation is adjudicated, because, for instance, the petitioner failed to apply for discretionary relief prior to IIRIRA's effective date,[10] no "settled expectations" were disturbed, and, therefore no impermissible retroactive effect occurred. *See Lattab v. Ashcroft*, 384 F.3d 8, 13 (1st Cir. 2004); *Ojeda-Terrazas*, 290 F.3d at 301-02. However, when retroactive application not only affected the way in which the petitioner's deportation was adjudicated, but also affected the substantive relief that was available to the petitioner, § 1231(a)(5) could not be applied retroactively.

Here, Mr. Faiz-Mohammad both reentered the United States and applied for adjustment of status prior to IIRIRA's effective date. At the time that he made his application, Mr. Faiz-Mohammad, therefore, had the right to have his adjustment of status adjudicated, including the waivers of inadmissibility necessary to his application. Although he had no guarantee of a favorable decision, the second step of *Landgraf* does not address only the "tak[ing] away or impair[ing] of vested rights"; it also asks whether retroactive application would "create[ ] a new obligation, impose[ ] a new duty, or attach[ ] a new disability." *Landgraf*, 511 U.S. at 280. Section 1231(a)(5) prevents aliens who previously have been deported from applying for discretionary relief. This change constitutes a "new disability" that did not exist

---

[10] As noted previously, the Eighth Circuit does not require that the petitioner have applied for relief prior to IIRIRA's effective date, only that the petitioner have reentered the United States and became eligible for discretionary relief prior to that time. *See Alvarez-Portillo v. Ashcroft*, 280 F.3d 858 (8th Cir. 2002). Because Mr. Faiz-Mohammad both reentered the United States and applied for adjustment of status prior to IIRIRA's effective date, we have no occasion to consider whether some lesser action on the part of the petitioner would alter our retroactivity analysis.

prior to IIRIRA's passage. *See Arevalo*, 344 F.3d at 15 ("Discarding her application now would deprive her both of a right that she once had and of the reasonable expectation that she would have the opportunity to convince the Attorney General to grant her relief."); *Alvarez-Portillo*, 280 F.3d at 867 (holding that elimination of possibility of discretionary relief, even if raised as a defense in a removal proceeding, resulted in an impermissible retroactive effect on the alien). Consequently, because § 1231(a)(5) operates to "impair rights [Mr. Faiz-Mohammad] possessed when he acted," *Landgraf*, 511 U.S. at 280, namely his ability to apply for discretionary relief, § 1231(a)(5) may not be applied retroactively to Mr. Faiz-Mohammad.[11]

---

[11] The Government argues that, even if § 1231(a)(5) cannot operate retroactively to prevent Mr. Faiz-Mohammad from applying for relief, the administrative determination nevertheless should be affirmed on the ground that Mr. Faiz-Mohammad received an adverse determination on his I-212 waiver, and, absent this waiver, he may not be granted an adjustment of status. Regulations provide that a Form I-212 waiver petition must be made with "the district director having jurisdiction over the place where the alien resides." 8 C.F.R. § 1212.2(e). However, the same regulation further provides that, "[i]f the application under section 245 of the Act [adjustment of status] has been initiated, *renewed*, or is pending in a proceeding before an immigration judge, the district director must refer the Form I-212 to the immigration judge for adjudication." *Id.* (emphasis added). Furthermore, it is clear that, although the regulations do not provide for an administrative appeal or grant an affirmative right to proceed before an IJ, they do provide that the alien "retains the right to renew his or her application in proceedings under 8 CFR part 1240 [removal proceeding]." 8 C.F.R. § 245.2. Thus, the regulations grant Mr. Faiz-Mohammad the right to have an IJ review the waiver determination when the IJ considers his application

(continued...)

## Conclusion

For the foregoing reasons, we reverse the decision of the INS and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED


A true Copy:

      Teste:


                      _____
                      *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*

---

[11] (...continued)
for discretionary relief. *Cf. Lopez-Flores v. Dep't of Homeland Sec.*, 387 F.3d 773, 776-77 (8th Cir. 2004) (acknowledging an alien's ability to seek an I-212 waiver before an IJ).

---