**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

FRANCISCO VELASQUEZ-GABRIEL,
                    *Petitioner,*

v.

LOUIS D. CROCETTI, JR., District
Director for the Immigration and
Naturalization Service; U.S.
IMMIGRATION & NATURALIZATION
SERVICE; JOHN ASHCROFT, Attorney
General,

                    *Respondents.*

No. 00-1755

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-669-804)

Argued: April 2, 2001

Decided: August 22, 2001

Before MOTZ and GREGORY, Circuit Judges, and
Frederic N. SMALKIN, United States District Judge
for the District of Maryland, sitting by designation.

Petition for review denied in part and dismissed in part. Judge Motz
wrote the opinion, in which Judge Gregory and Judge Smalkin joined.

**COUNSEL**

**ARGUED:** Jaime Wintheysen Aparisi, Silver Spring, Maryland, for
Petitioner. Papu Sandhu, Senior Litigation Counsel, Office of Immi-

gration Litigation, Civil Division, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Respondents. **ON BRIEF:** David W. Ogden, Assistant Attorney General, Emily Anne Radford, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondents.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Francisco Velasquez-Gabriel challenges, as impermissibly retroactive, the Immigration and Naturalization Service's (INS) reinstatement of his prior deportation pursuant to § 241(a)(5) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(a)(5) (Supp. V 1999). We hold that § 241(a)(5) does not have a retroactive effect on Velasquez-Gabriel and thus affirm reinstatement of the prior order deporting him.

### I.

Velasquez-Gabriel, a native and citizen of Guatemala, entered the United States illegally in 1992. An immigration judge ordered him deported on September 29, 1994; he was finally removed from the United States on October 19, 1995. Upon his brief return to Guatemala, in November 1995, Velasquez-Gabriel divorced his Guatemalan wife of 23 years. Shortly thereafter, he illegally reentered the United States and, on February 9, 1996, married Lorraine Boyce, a United States citizen.

On September 30, 1996, Congress enacted major immigration reform legislation, entitled the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546 (1996). Title III, Subtitle A of IIRIRA instituted a complete "Revision of Procedures for Removal of Aliens." 110 Stat. 3009-575. Congress included in that subtitle IIRIRA § 305(a), creating new § 241(a)(5) of the INA, which provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). The statute defines "order of removal" as follows:

> For purposes of carrying out the Immigration and Nationality Act, as amended by this subtitle

> . . . .

> (2) any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation.

IIRIRA § 309(d). Congress also stated that Subtitle A, which revised the procedures for removing aliens, "shall take effect on" April 1, 1997. IIRIRA § 309(a).

In November 1997, more than seven months after § 241(a)(5) took effect, Velasquez-Gabriel's wife, Lorraine Boyce, filed a Form I-130 (Petition for Alien Relative) on his behalf and he simultaneously filed a Form I-485 (Application to Adjust to Register Permanent Residence or Adjust Status) based on his marriage to a United States citizen. On March 17, 2000, the INS denied Velasquez-Gabriel's application for adjustment of status because he entered the United States without inspection, citing INA § 212(a)(6)(A), 8 U.S.C. § 1182(a)(6)(A), and reentered the United States illegally after previous removal, citing INA § 212(a)(9)(A), 8 U.S.C. § 1182(a)(9)(A), and 8 C.F.R. § 241.8 (1999) (implementing § 241(a)(5)).

On May 16, 2000, Velasquez-Gabriel filed an Application for Permission to Reapply for Admission Into the United States After Depor-

tation or Removal. On the same day, however, the INS reinstated Velasquez-Gabriel's prior order of deportation "in accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 C.F.R. 241.8." The immigration judge denied Velasquez-Gabriel's subsequent application for asylum, finding Velasquez-Gabriel did not have a "reasonable fear" of persecution or torture; he does not seek review of this ruling.

Rather, Velasquez-Gabriel petitions this court to review and reverse the INS's May 16, 2000 order reinstating the 1994 order deporting him.[1] For the reasons that follow, we deny his petition.

## II.

At the outset, we dispose of two preliminary matters.

First, we note that, as the INS concedes, we clearly have subject matter jurisdiction in this case. Congress has expressly provided that aliens seeking to challenge an "order of removal" may file a petition for review with "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." *See* INA § 242(b), 8 U.S.C. § 1252(b) (Supp. V 1999).

Second, contrary to Velasquez-Gabriel's suggestion, his status as a "deported" rather than a "removed" alien does not render § 241(a)(5) of the INA (§ 305(a) of the IIRIRA) inapplicable to him. Although Velasquez-Gabriel acknowledges that IIRIRA § 309(d)(2) expands the definition of removal in § 241(a)(5) to include deportation, he suggests that § 309(d)(2) applies only to those "removal" proceedings ongoing at the time of IIRIRA's enactment.

---

[1] Velasquez-Gabriel also seeks direct review of the INS's March 17, 2000 order denying status adjustment. We lack jurisdiction to review a denial of status adjustment, *see* INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B) ("[N]o court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255."); INA § 245, 8 U.S.C. § 1255 (governing "[a]djustment of status of nonimmigrant to that of person admitted for permanent residence"), and therefore dismiss this portion of the petition.

That theory finds no support in the plain language of § 309(a), which states that Subtitle A "and the amendments made by this subtitle shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act [April 1, 1997]." Section 309(c) establishes transitional rules for ongoing proceedings, but there is no indication that § 309(d) is also a transitional rule that applies solely to ongoing, not post-enactment, proceedings. In fact, such a reading would eviscerate IIRIRA's streamlined removal procedures by resurrecting the distinctions between "removal," "deportation," and "exclusion" that § 309(d)(2) sought to abolish. *See United States v. Lopez-Gonzalez*, 183 F.3d 933, 934 (9th Cir. 1999) (holding that IIRIRA "eliminate[d] the previous legal distinction between deportation, removal and exclusion"); *see also INS v. St. Cyr*, ___ U.S. ___, 121 S. Ct. 2271, 2287 (2001) (noting that IIRIRA substituted "the term 'removal' . . . for 'deportation'"). Velasquez-Gabriel's contention also contradicts the relevant regulation, which applies § 241(a)(5) to "an order of exclusion, deportation, or removal." 8 C.F.R. § 241.8(a) (1999). Accordingly, we reject it.

We now turn to Velasquez-Gabriel's principal argument.

### III.

Velasquez-Gabriel contends that Congress did not intend INA § 241(a)(5) "to apply retroactively to pre-IIRIRA deportation orders," and that, even if the statute's temporal reach is ambiguous, to apply it to him would have an impermissible retroactive effect. To resolve this question, we must first ascertain "whether Congress expressly prescribed the statute's reach." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). "If there is no congressional directive on the temporal reach of a statute, we determine whether the application of the statute to the conduct at issue would result in a retroactive effect. If so, then in keeping with our 'traditional presumption' against retroactivity, we presume that the statute does not apply to that conduct." *Tasios v. Reno*, 204 F.3d 544, 547-48 (4th Cir. 2000) (quoting *Martin v. Hadix*, 527 U.S. 343 (1999)).

We held this case in abeyance, awaiting the Supreme Court's decision in *INS v. St. Cyr*, which provides substantial guidance as to several of the retroactivity questions presented here. In *St. Cyr*, the Court

rejected the INS's contention that Congress clearly intended to apply retroactively IIRIRA's repeal of former INA § 212(c), *see* IIRIRA § 304(b), which provided for a discretionary waiver of deportation even for those aliens that had committed certain aggravated felonies. *See St. Cyr*, 121 S. Ct. at 2290. The Court further held that this repeal had a retroactive effect on aliens that pled guilty to one of those specified crimes in reliance on the availability and reasonable likelihood of obtaining a discretionary deportation waiver. *See id.* at 2293. With these holdings in mind, we turn to the case at hand.

A.

Although § 241(a)(5) does not explicitly state whether it applies retroactively or prospectively, the INS and Velasquez-Gabriel each contend that Congress unambiguously defined the statute's temporal application.

1.

The INS asserts that Congress clearly indicated, in IIRIRA, that § 241(a)(5) is to apply to all aliens, including those, like Velasquez-Gabriel, who illegally reentered the United States prior to the effective date of that statute. The INS maintains that the comprehensive nature of IIRIRA's revision, the statute's general effective date, the presence of transitional rules, and the prospective nature of immigration deportation proceedings require this conclusion.

The Supreme Court's recent analysis in *St. Cyr* forecloses all of these arguments. *See St. Cyr*, 121 S. Ct. at 2287-90.[2] The *St. Cyr* Court concluded that despite these very features, § 304(b) of IIRIRA

---

[2]*St. Cyr* also precludes the INS's contention that we should defer to the Board of Immigration Appeals's alleged retroactive application of § 241(a)(5). *See St. Cyr*, 121 S. Ct at 2290 n.45 ("We only defer, however, to agency interpretations of statutes that, applying the normal 'tools of statutory construction,' are ambiguous. Because a statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective, there is, for *Chevron* purposes, no ambiguity in such a statute for an agency to resolve.") (citations omitted).

was ambiguous and "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien . . . forecloses the conclusion that, in enacting § 304(b), Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the counteracting benefits." *Id.* at 2290 (internal quotation marks omitted).

2.

Velasquez-Gabriel's contrary argument is equally untenable.

Velasquez-Gabriel acknowledges that Congress failed to insert any express statement as to whether § 241(a)(5) applies to those aliens that reentered the country prior to the statute's effective date. He notes, however, that Congress did expressly state that several other provisions of Title III of IIRIRA apply retroactively. *See, e.g.*, IIRIRA § 321(c) ("The amendments made by this section [amending the definition of aggravated felony] shall apply to actions taken on or after the date of the enactment of this Act, *regardless of when conviction occurred.*") (emphasis added); IIRIRA § 322(c) ("The amendments [defining conviction and sentences] . . . shall apply to convictions and sentences entered *before*, on, or after the date of the enactment of this Act.") (emphasis added); IIRIRA § 324(c) ("The amendment [regarding penalties for reentry of deported aliens] . . . shall apply to departures that occurred *before*, on, or after the date of the enactment of this Act, but only with respect to entries (and attempted entries) occurring on or after such date.") (emphasis added); IIRIRA § 347(c) ("The amendments made by this section [regarding the removal of aliens who have unlawfully voted] shall apply to voting occurring *before*, on, or after the date of the enactment of this Act") (emphasis added).

According to Velasquez-Gabriel, because Congress explicitly mandated that these provisions of the statute apply to pre-enactment conduct, a court must make a negative inference as to § 241(a)(5). That is, since Congress failed to include a similar express mandate with respect to § 241(a)(5), he contends that a court must infer that the legislature intended § 241(a)(5) to apply only to reentries that occurred

after its enactment. *See Lindh v. Murphy*, 521 U.S. 320, 329 (1997). This argument fails for two reasons.

First, although Congress certainly made several provisions in Title III explicitly retroactive, it also expressly provided that other provisions apply only prospectively. *See, e.g.*, IIRIRA § 352(b) ("The amendment made by subsection (a) [excluding aliens who have renounced citizenship for tax reasons] shall apply to individuals who renounce United States citizenship *on and after* the date of the enactment of this Act.") (emphasis added). *See also* IIRIRA § 105(c) ("The amendments made by subsection (a) [regarding civil penalties for illegal entry] shall apply to illegal entries or attempts to enter occurring *on or after* the first day of the sixth month beginning after the date of the enactment of this Act."). As such, IIRIRA is not an instance in which Congress specifically stated that one provision applies retroactively, thus leading a court to the logical inference that Congress's silence in other, closely related provisions indicated a contrary intention. *Cf. Lindh*, 521 U.S. at 326-27. Rather, as in *Tasios*, "[o]ur examination of the sometimes retrospective, sometimes prospective provisions that surround [the statute] unveils the Janus-like faces of Congress, but leaves its mind concealed." *Tasios*, 204 F.3d at 549.

Moreover, all of the expressly retroactive statutory provisions on which Velasquez-Gabriel relies appear in separate, unrelated subtitles of the act. *See id.* Specifically, they are contained in Subtitle B, IIRIRA §§ 321-334, 110 Stat. 3009-627 to 3009-635 (Criminal Alien Provisions), and Subtitle C, IIRIRA §§ 341-353, 110 Stat. 3009-635 to 3009-641 (Revision of Grounds for Exclusion and Deportation), of IIRIRA, Title III. Those subtitles govern different conduct and have no relation to the comprehensive revision of removal procedures contained in Subtitle A, which are at issue in this case. Unlike Subtitles B and C, Subtitle A includes a general effective date that applies to almost all of its provisions. *See* IIRIRA § 309(a). Thus, it is not surprising that many sections of Subtitles B and C have their own effective dates and § 241(a)(5) does not. The mere fact that the individual effective date provisions in Subtitles B and C contain express temporal restrictions sheds no light on Congress's intent regarding § 241(a)(5)'s application to pre-enactment reentries.[3]

---

[3]Relying heavily on the "negative implication" analysis in *Lindh*, the Ninth Circuit recently held that Congress did not intend to apply

3.

For these reasons, we must reject both the INS's and Velasquez-Gabriel's contentions. Because we cannot conclude that Congress unambiguously indicated either that § 241(a)(5) applies to all aliens or that it applies only to aliens that reentered the country after the statute's effective date, we must proceed to the second step of the retroactivity analysis and determine whether § 241(a)(5) operates in an impermissibly retroactive manner when applied to Velasquez-Gabriel.

B.

"The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'" *St. Cyr*, 121 S. Ct. at 2290 (quoting *Martin*, 527 U.S. at 357-58 (quoting *Landgraf*, 511 U.S. at 270)). A court must bear in mind that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law," *Landgraf*, 511 U.S. at 269 (citation omitted), and that normally "a court is to apply the law in effect at the time it renders its decision," *id.* at 264. The Supreme Court has "repeatedly counseled" that "the judgment whether a particular statute acts retroactively should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations," *St. Cyr*, 121 S. Ct. at 2291 (internal quotation marks omitted); "individuals should have an opportunity to know what the law is and to conform their conduct accordingly," *Tasios*, 204 F.3d at 550 (quoting *Landgraf*, 511 U.S. at 263).

---

§ 241(a)(5) to pre-enactment reentries. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1050-52 (9th Cir. 2001). Our reading of *Lindh*, however, is more limited, especially in interpreting statutory provisions that "address distinct subject matters" and where Congress has included both retroactive and prospective provisions in contrast to the "neat distinction" between silence and the clear statement of retroactivity presented in *Lindh*. *Tasios*, 204 F.3d at 548-49.

Velasquez-Gabriel asserts that § 241(a)(5) has an impermissibly retroactive effect on him because it impairs a right he possessed prior to its enactment, *see Landgraf*, 511 U.S. at 280, i.e., the right to request adjustment of his immigration status based on his marriage to a United States citizen.

Again, *St. Cyr* provides significant assistance in resolving the question. On one hand, *St. Cyr* precludes the government's contention that Velasquez-Gabriel cannot prevail because the relief he seeks was vested within the discretion of the INS or because he "cannot demonstrate that he had any vested right to adjust his status." Brief of Respondent at 40. The *St. Cyr* Court stated that the discretionary nature of the relief sought "d[id] not affect" its holding that the statute had an impermissibly retroactive effect, explaining that "[t]here is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." 121 S. Ct. at 2293. On the other hand, in reaching this decision, the *St. Cyr* Court heavily relied on two factors not present here: (1) "aliens like St. Cyr had a significant likelihood of receiving" the relief they sought under the old law and (2) they "almost certainly relied upon that likelihood" to their detriment. *Id.* These two factors similarly formed the basis for our retroactivity holding in *Tasios*. 204 F.3d at 551-52.

Ultimately, Velasquez-Gabriel's case differs critically from *St. Cyr* and *Tasios* in both respects. Velasquez-Gabriel has shown neither a reasonable likelihood of success under pre-IIRIRA law nor a detrimental reliance on pre-IIRIRA law. Assuming for purposes of this appeal that, as Velasquez-Gabriel maintains, the INS prevented him from demonstrating the likelihood of receiving relief by refusing to permit him to offer any evidence on this point, nothing prevented him from articulating facts constituting his asserted detrimental reliance. Yet, Velasquez-Gabriel's sole reliance argument is that he and his wife "relied to their detriment on petitioner's ability to adjust status in the United States when they were married, and may have chosen not to get married but proceed on a fiancee (K-1 visa) or may not have married at all." Brief of Petitioner at 23. This does not constitute detrimental reliance for purposes of assessing the retroactive effect of § 241(a)(5). In contrast to the aliens in *St. Cyr* and *Tasios*, Velasquez-Gabriel posits no way in which his marriage in "reliance" on preexist-

ing law weakened his *immigration status* under the new law or hurt his chances of remaining in this country. Simply stating that he relied to his detriment proves nothing. Accordingly, even if he could demonstrate a significant likelihood of receiving the relief he sought under the old law, he offers no "detrimental reliance" of the sort which played such a critical role in the *St. Cyr* and *Tasios* holdings.

That Velasquez-Gabriel did not detrimentally rely on prior law may not, however, foreclose a claim that § 241(a)(5) nonetheless operates retroactively. *See Hughes Aircraft Co. v. United States*, 520 U.S. 939 (1997) (holding that the amended False Claims Act operated retroactively without discussing whether any party detrimentally relied on previous law). But we need not decide that question because there is a far simpler reason compelling our conclusion that the application of § 241(a)(5) is not impermissibly retroactive in this case: not until well after § 241(a)(5) took effect did Velasquez-Gabriel apply to adjust his status or did his wife file for a visa petition on his behalf. In order to obtain an adjustment of status, an application must have been filed and an immigrant visa must be immediately available to the applicant, 8 U.S.C. § 1255(a)(3) (Supp. V 1999); Velasquez-Gabriel did not attempt to meet either of these requirements until *after* the effective date of § 241(a)(5).

Velasquez-Gabriel and Boyce married on February 9, 1996. Congress did not enact IIRIRA until seven months later, on September 30, 1996. Section 241(a)(5) did not take effect for another six months after that. *See* IIRIRA § 309(a). Thus, Boyce and Velasquez-Gabriel were married for more than a year before § 241(a)(5) took effect, but she did not file a visa petition for him and he did not apply to adjust his status until November 1997, more than a year after IIRIRA was passed, even though he was represented by counsel the entire time. *See* Brief of Petitioner at 23. ("After petitioner's reentry . . . he sought the advice of counsel and counsel advised him that he would in fact be eligible to adjust his status based upon his marriage to a United States citizen. That was the state of the law on February 9, 1996, when the petitioner was married.").

Velasquez-Gabriel does not suggest, let alone contend, that he had insufficient time to apply for a status adjustment. *Cf. Brown v. Angelone*, 150 F.3d 370, 374 (4th Cir. 1998) (holding that denial of habeas

petition was impermissibly retroactive because even though the petition was filed after enactment of the new law, it did not provide "a reasonable time after the effective date . . . in which to initiate action"). Indeed, he states that immigration counsel represented him since at least 1996 and informed him of his rights under pre-IIRIRA law. Velasquez-Gabriel obviously had considerable "opportunity to know what the law [was] and to conform [his] conduct accordingly." *Tasios*, 204 F.3d at 550 (quoting *Landgraf*, 511 U.S. at 265).

Accordingly, Velasquez-Gabriel's failure to apply to adjust his resident status before the new law took effect fatally undermines his contention that § 241(a)(5)'s application to him "attaches new legal consequences to events *completed* before its enactment." *St. Cyr*, 121 S. Ct. at 2290 (emphasis added).

### IV.

For the foregoing reasons, we deny Velasquez-Gabriel's petition to review the INS's reinstatement of the prior order deporting him and dismiss his appeal of the INS's denial of his application to adjust his status.[4]

*PETITION FOR REVIEW DENIED IN PART AND DISMISSED IN PART*

---

[4]Although Velasquez-Gabriel mentions the Due Process Clause in passing, he does not articulate any constitutional challenge to § 241(a)(5), thus we express no opinion on that issue.