

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-1-2005

# Dinnall v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-2415

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Dinnall v. Atty Gen USA" (2005). *2005 Decisions.* Paper 497.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/497

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2415
_____

HAROLD GEORGE DINNALL

Petitioner

v.

ALBERTO GONZALES,* Attorney General
Of the United States of America,

Respondent

*Substituted pursuant to Federal Rule of Appellate Procedure
43(c)(2)

_____

On Petition for Review
from the Board of Immigration Appeals
BIA No. A27 931 848

Argued: May 5, 2005

Before: McKee, Smith, Van Antwerpen *Circuit Judges*

(Opinion Filed: September 1, 2005)

DEREK W. GRAY, Esq., (Argued)
Steel, Rudnick & Ruben
1608 Walnut Street
Suite 1500
Philadelphia, PA 19103

*Attorney for Petitioner*

PETER D. KEISLER, Esq.
Assistant Attorney General Civil Division

JULIA DOIG WILCOX, Esq.
Senior Litigation Counsel

ARTHUR L. RABIN, Esq.
Trial Attorney

JEFFREY J. BERNSTEIN, Esq. (Argued)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044

*Attorneys for Respondent*

OPINION

McKee, *Circuit Judge*

Harold Dinnall petitions for review of an order of the Bureau of Immigration and Customs Enforcement ("BICE"), Department of Homeland Security ("DHS"), reinstating his prior order of deportation and ordering his removal under Section 241(a)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(5) (2000), enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").[1]  Dinnall argues that the reinstatement provision is impermissibly retroactive.  We agree. For the reasons that follow, we will grant the petition for review and vacate reinstatement of the deportation order.

## I. BACKGROUND

Dinnall is a native and citizen of Jamaica who entered the United States in the 1980's.  It is unclear if he entered illegally or on a visitor visa, but the distinction is irrelevant to our resolution of the issues raised in this appeal.

After Dinnall was "pulled over" for a traffic violation, on August 10, 1987, the Immigration and Naturalization Service

---

[1] For the sake of uniformity, we will cite to the INA section numbers throughout with an initial cross-reference to their section numbers in Title 8 of the United States Code. Accordingly, we will cite 8 U.S.C. § 1231(a)(5) as INA § 241(a)(5); however opinions cited herein may also refer to this provision as IIRIRA § 305(a)(5).

3

("INS")[2] took him into custody and issued an Order to Show Cause ("OSC"), charging him with being deportable from the United States pursuant to former Section 241(a)(2) of the INA. That section pertains to aliens who entered the United States without immigration inspection. The INS subsequently released Dinnall from custody on a $10,000.00 bond. On September 23, 1987, the INS sent Dinnall a hearing notification letter, informing him that he was scheduled for a hearing date before an Immigration Judge on October 7, 1987. Dinnall contends that he never received the letter as it was sent to the wrong address. There is record support for that contention.[3] Dinnall failed to appear at his October 7, hearing, and the IJ ordered him deported *in absentia*. The INS issued a warrant of deportation on November 20, 1987.

That warrant was not served before Dinnall left the United States and went to Jamaica on January 4, 1988. Under the regulations then in effect, Dinnall was considered to have "self-deported." *See* 8 C.F.R. § 243.5 (1987) ("Any alien who has departed from the United States while an order of

---

[2]On March 1, 2003, the Immigration and Naturalization Service ceased to exist as an independent agency within the Department of Justice and its functions were transferred to the newly formed Department of Homeland Security. *See* Homeland Security Act, 116 Stat. 2135, Pub. L. 107-296 (2002). The former INS was divided into three separate agencies: United States Immigration and Customs Enforcement; Bureau of Customs and Border Protection; and the United States Citizenship and Immigration Services.

[3]The address that Dinnall gave the immigration officials in August was 4450 N.W. 24th St., Miami, FL 33313. The hearing notification letter was sent to 4450 N.W. 24th St., Miami, FL 33126; the wrong zip code.

4

deportation is outstanding shall be considered to have been deported in pursuance of law."). Because Dinnall left under an order of deportation, he could not legally reenter the United States for a period of five years. However, he returned to the United States two days after he left.

In 1994, Dinnall was again taken into custody by the INS, and the INS issued another OSC. That OSC charged him with illegally re-entering the United States following deportation. Dinnall posted a $10,000.00 bond.[4]

In January, 1998, Dinnall married a United States citizen, and he now has at least one child who is also a United States citizen.[5] In May, 2004, the BICE again took Dinnall into custody, and on May 13, 2004, the BICE reinstated Dinnall's 1987 deportation order, pursuant to § 241(a)(5). A warrant of removal was issued on the same date. As of the date this case was argued, Dinnall remained in custody at York County Prison.

Dinnall filed a Petition for Review and a motion to stay deportation with this court on May 20, 2004, and on June 17, 2004 we ordered Dinnall's deportation stayed pending a decision on his Petition for Review to address his contention that the reinstatement provision is impermissibly retroactive as

---

[4] Although not relevant to the present appeal, Dinnall asserts that the INS never filed the 1994 OSC with an Immigration Court. According to Dinnall, the Executive Office for Immigration Review has no record of deportation proceedings against him after the 1987 proceedings.

[5] In May 2004, Dinnall's wife filed a fiancé visa application on his behalf.

5

applied to him.[6]

Dinnall's Petition presents a legal question, and our review is therefore de novo; the agency's views garner no special deference. *See INS v. St. Cyr*, 533 U.S. 289, 321 n.45 (2001) ("We only defer . . . to agency interpretations of statutes that, applying the normal tools of statutory construction, are ambiguous. Because a statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective, there is, for *Chevron* purposes, no ambiguity in such a statute for an agency to resolve.") (citations and quotations marks omitted); *see also Arevalo v. Ashcroft*, 344 F.3d 1, 9-10 (1st Cir. 2003) (explaining that "courts, rather than agencies, are best equipped to make the constitutionally tinged judgment calls inherent in retroactivity determinations"); *Sarmiento Cisneros v. United States Attorney* General, 381 F.3d 1277, 1280 (11th Cir. 2004) (same); *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 300 n.53 (5th Cir. 2002) (same); *Bejjani v. INS*, 271 F.3d 670, 679 (6th Cir. 2001) (same).

## II. DISCUSSION

Dinnall's sole argument on appeal is that INA § 241(a)(5) may not be applied retroactively to aliens who reentered the United States prior to IIRIRA's effective date because the statute impairs certain rights that these aliens possessed prior to

---

[6] Because an order reinstating a prior removal order is "the functional equivalent of a final order of removal," *Arevalo v. Ashcroft*, 344 F.3d 1, 9-10 (1st Cir. 2003), we have jurisdiction to hear Dinnall's petition. *See* INA § 242(a), 8 U.S.C. § 1252(a) (2000); *Avila-Macias v. Ashcroft*, 328 F.3d 108, 110 (3d Cir. 2003).

that time.[7]

**A. Retroactivity**

Congress may undoubtedly enact statutes that operate retroactively. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 267 (1994). However, since retroactive legislation can potentially alter the consequences of actions already taken, we must presume that Congress intends legislation to only act prospectively. *Id*. at 272-73.

In *Landgraf*, the Supreme Court established guidelines for determining whether a statute enacted after a particular event can alter the legal consequences of that event. The result is a two-part inquiry that "demands a commonsense, functional judgment" and "should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." *Martin v. Hadix*, 527 U.S. 343, 357-58 (1999) (internal quotations marks omitted).

We must first determine if Congress has declared whether the statute should have retroactive effect. *Landgraf*, 511 U.S. at 280. "In answering this question, courts should employ the customary rules of statutory construction, assaying the language of the statute itself and then considering its structure and purpose." *Arevalo*, 344 F.3d at 10. If the statute itself does not sufficiently denote the temporal reach of its provisions, there is a "presumption against statutory retroactivity," and further inquiry should follow. *Ponnapula v. Ashcroft*, 373 F.3d 480, 487 (3d Cir. 2004).

In conducting this further inquiry, we must consider

---

[7] We will discuss the legislative background of IIRIRA in more detail below.

7

whether retroactive application of the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280; *accord St. Cyr*, 533 U.S. at 321 ("A statute has retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past."). If such ramifications loom, the default rule is that the statute should not be construed to regulate the past conduct. *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 946 (1997).

However, the mere fact that a new statute has some retroactive effect does not automatically resolve step two of the *Landgraf* inquiry. A new law is not impermissibly retroactive simply because it has implications for completed events. "[A]pplication of new statutes passed after the events in suit is unquestionably proper in many situations." *Landgraf,* 511 U.S. at 273. Rather, the statute's temporal reach becomes unacceptable only when its retroactive application would significantly impair existing rights and thereby disappoint legitimate expectations. *Gen. Motors Corp. v. Romein,* 503 U.S. 181, 191(1992).

Although our inquiry considers disappointed expectations, we have not required the party opposing application of an amendment to establish *actual* reliance on the prior statute. *See Ponnapula*, 373 F.3d at 489-90. Indeed, any requirement of a "quantum of evidence regarding the subjective intent of the party seeking to avoid retroactive application . . . [is] in tension with the language of presumption in *Landgraf* and its progeny . . . [and] incorrectly focuses attention on the particular facts and circumstances of the party before the court." *Id*. at 491. "The likelihood that the party before the court did or

did not in fact rely on the prior state of the law is not germane to the question of retroactivity. Rather, courts are to concentrate on the group to whose conduct the statute is addressed." *Id*. at 493.

**B. Section 241(a)(5)**

Here, the government reinstated the 1987 *in absentia* deportation order against Dinnall under INA § 241(a)(5). This section states:

Reinstatement of removal orders[8] against aliens illegally reentering

If the Attorney General finds that an alien has

reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). This statute was enacted on September 30, 1996 as part of IIRIRA, and had an effective date of April 1, 1997.

The previous reinstatement statute, 8 U.S.C. § 1252(f),

---

[8]For all relevant purposes in this appeal, the terms "deportation" and "removal" are used interchangeably. *See Avila-Macias*, 328 F.3d at 111-112.

9

INA § 242(f) (repealed 1997), stated:

Unlawful reentry

Should the Attorney General find that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952, on any ground described in any of the paragraphs enumerated in subsection (e) of this section [covering deportation based on various enumerated reasons including commission of alien smuggling and other criminal offenses], the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry. For the purposes of subsection (e) of this section the date on which the finding is made that such reinstatement is appropriate shall be deemed the date of the final order of deportation.

The new reinstatement statute therefore differs from its predecessor in three important ways: (1) it applies to *all* prior removal, deportation, and exclusion orders, not just to certain grounds of deportation (such as criminal offenses); (2) it prohibits reopening or review of the prior removal order; and (3) it prohibits any applications for relief. Furthermore, the prior statute did not apply to aliens such as Dinnall whose basis for deportation was solely their illegal entry. Rather, under the prior statute, aliens who illegally reentered were entitled to a new deportation proceeding before again being deported. Under the new statute, all aliens who illegally reenter the United States following their removal or deportation have their prior deportation orders summarily reinstated without any opportunity

10

to attack their underlying deportation orders or to seek new forms of relief from removal or deportation.

Moreover, the Attorney General has promulgated a new procedure to implement the new reinstatement statute, and that is codified at 8 C.F.R. § 241.8 (2004). The new regulations delegate the Attorney General's reinstatement authority to immigration officers (rather than immigration judges) outside the course of formal removal proceedings. Under the former regulation, an alien subject to a reinstatement order was entitled to a hearing before an Immigration Judge, who was charged with determining the identity of the alien, whether the alien had previously been deported, and whether the alien illegally reentered the United States. 8 C.F.R. § 242.23 (repealed 1997). At the hearing before the IJ, the alien could contest the charges and the evidence, present his or her own evidence, and apply for relief from deportation. The alien also had the right to counsel, and the right to appeal an adverse decision to the Board of Immigration Appeals. *See id.* Under the current regulations, the government is still required to determine the identity of the alien, whether the alien has previously been deported, and whether the alien illegally reentered the United States. 8 C.F.R. § 241.8. However, the alien is not allowed a hearing before an IJ, nor does the alien have a right to counsel. 8 C.F.R. § 241.8(a). Rather, an immigration official makes the abovementioned inquiries and determines whether to issue a reinstatement order. 8 C.F.R. §§ 241.8(a)(1)-(3).[9]

---

[9]This new regulation was found unconstitutional in *Morales-Izquierdo v. Ashcroft*, 388 F.3d 1299 (9th Cir. 2004). The court found that 8 C.F.R. § 241.8 was *ultra vires*, as it conflicted with the clear and unambiguous provision of Section 240(a) of the INA, which specifies that immigration judges must conduct all proceedings for deciding inadmissibility or deportability of

## C. The Parties' Arguments.

As noted earlier, Dinnall was ordered deported on October 7, 1987 and he left the United States under that order of deportation on January 4, 1988, to reenter the United States on January 6, 1988. Employing a *Landgraf* analysis, Dinnall first maintains that Congress clearly did not intend § 241(a)(5) to apply to these events occurring before the effective date of § 241(a)(5). He reaches this conclusion because: (1) § 241(a)(5) eliminated the retroactivity language of the prior reinstatement provision, and did not simply leave it intact or modify the date; *see* INA § 242(f) (repealed 1997) (specifying that reinstatement was applicable to reentries "whether before or after June 27, 1952"); (2) Congress considered and rejected new language that would have applied the new reinstatement provision to pre-enactment illegal reentries;[10] (3) elsewhere in the statute, where IIRIRA changes rules for conduct that occurred prior to its

_____

aliens. *Id.* at 1302-05. Dinnall has not raised this issue in his Petition for Review.

[10]The House and Senate reports indicate that the language of the statute, prior to being amended, stated:

> Should the Attorney General find that any alien
> has unlawfully reentered the United States after
> having previously departed or been deported
> pursuant to an order of deportation, *whether*
> *before or after the date of enactment of this Act*,
> on any ground described in any of the
> paragraphs enumerated in subsection (e) . . .

H.R.Rep. No. 104-469(I) at 416-17 (1996), 1996 WL 168955 (emphasis added); S.Rep. No. 104-249 at 118 (1996), 1996 WL 180026 (emphasis added).

12

effective date, Congress specifically indicated that the relevant sections would apply to pre-enactment conduct; *see, e.g.,* IIRIRA § 321 (modifying the definition of the term "aggravated felony" and providing that the new definition applies regardless of whether the conviction was entered "before, on, or after the date of enactment"); and (4) Congress failed to include language explicitly making the provision retroactive.

Under the second prong of the *Landgraf* inquiry, Dinnall argues that, even if Congress's intent is unclear, retroactive application of § 241(a)(5) would "attach new legal consequences to events that occurred before enactment of the statute and impair rights that [Dinnall] possessed at the time of his reentry." Specifically, Dinnall points to the fact that, under § 241(a)(5), he can no longer attempt to reopen his prior deportation order or have it reviewed, and he can no longer apply for discretionary relief such as voluntary departure.[11] Lastly, Dinnall contends that he detrimentally relied on the previous reinstatement statute by paying a $10,000.00 bond so that he would have the opportunity to have a hearing before an

---

[11] The regulations in effect at the time of Dinnall's illegal reentry provided the following as to voluntary departure:

> [I]f the alien establishes that he/she is willing and has the immediate means with which to depart promptly from the United States, an immigration judge may authorize the alien to depart voluntarily from the United States in lieu of deportation within such time as may be specified by the immigration judge when first authorizing voluntary departure, and under such conditions as the district director shall direct.

8 C.F.R. 244.1 (1987).

13

Immigration Judge and apply for relief from deportation.

The government counters by arguing that, (1) in *Avila-Macias v. Ashcroft*, 328 F.3d 108 (3d Cir. 2003), we decided that § 241(a)(5)'s language is not sufficiently clear to determine the statute's temporal reach, and (2) the application of § 241(a)(5) does not impair any vested rights or impose any new obligations on Dinnall.

### D. Analysis

#### 1. The First Prong of Landgraf

In *Avila-Macias*, we were called upon to decide whether § 241(a)(5) was impermissibly retroactive when applied to an alien who was deported prior to the effective date of IIRIRA, but who did not claim to have reentered prior to the effective date. 328 F.3d at 114. In analyzing Avila-Macias's claim under *Landgraf*'s first prong, we rejected arguments almost identical to those put forth by Dinnall and concluded, "[w]hat is clear is that Congress' intent with regard to the temporal reach of Section 305(a)(5) of IIRIRA is *not* clear." 328 F.3d at 114 (emphasis in original).[12]   Thus, having already decided that

---

[12]The Courts of Appeals for the Sixth and Ninth Circuits have reached a different result under the first prong of the *Landgraf* analysis. In *Bejjani*, 271 F.3d at 687, and *Castro-Cortez v. INS*, 239 F.3d 1037, 1053 (9th Cir. 2001), those courts concluded that Congress did not intend § 241(a)(5) to apply retroactively. In reaching this result, both courts relied primarily on Congress's elimination of the explicit retroactive language contained in former § 242(f), the legislative history of § 241(a)(5), and Congress's silence on the retroactivity of this provision.

However, every other circuit court of appeals that has

Congress did not specify § 241(a)(5)'s temporal reach, we need not revisit that question again here. Rather, we can proceed to the second inquiry under *Landgraf*.[13]

## 2. The Second Prong of Landgraf

considered the retroactivity of § 241(a)(5) has held, as we held in *Avila-Macias*, that there is no clear indication of Congress's intent regarding the provision's retroactive effect. *See Faiz-Mohammad v. Ashcroft,* 395 F.3d 799, 804 (7th Cir. 2005); *Sarmiento Cisneros*, 381 F.3d at 1283; *Arevalo*, 344 F.3d at 13; *Ojeda-Terrazas*, 290 F.3d at 299-300; *Alvarez-Portillo v. Ashcroft*, 280 F.3d 858, 865 (8th Cir. 2002); *Velasquez-Gabriel v. Crocetti*, 263 F.3d 102, 108 (4th Cir. 2001). In light of their analysis under prong one, these courts proceeded to analyze the retroactivity of § 241(a)(5) under the second prong of the *Landgraf* test. These cases are discussed in more detail below.

[13]In analyzing Avila-Macias's claim under the second prong of *Landgraf*, we stated, "[a]pplying IIRIRA to [Avila-Macias] – an alien who was deported prior to [IIRIRA's] effective date, *but who reentered afterwards* – does not have an impermissible retroactive effect because the consequences of an illegal reentry at the time that [Avila-Macias] reentered are the consequences he faces now." *Id*. (Emphasis added). Because Dinnall, unlike Avila-Macias, reentered the United States prior to IIRIRA's effective date, *Avila-Macias* does not advance our *Landgraf* analysis here. Indeed, we stated in *Avila-Macias* that, had the petitioner reentered the United States before IIRIRA's effective date, "he could at least plausibly argue that he did so believing (1) that he would be entitled to a hearing at which he could contest the legality of his underlying deportation order and (2) that he would be entitled to apply for discretionary relief." *Id*. at 99.

15

Under the second part of our *Landgraf* inquiry we must determine whether applying § 241(a)(5) to Dinnall would have an impermissible retroactive effect. *See Landgraf*, 511 U.S. at 280. Dinnall contends that, under § 241(a)(5), not only did he lose his right to counsel, his right to develop a record and his right to have a hearing before an IJ, he also lost his right to apply for discretionary relief from deportation (i.e. voluntary departure) before a neutral judge and to have his original *in absentia* deportation order reopened and reviewed so that he could argue lack of notice.

Because numerous other courts have previously addressed prong two of *Landgraf*'s retroactivity analysis in the immigration context, it is helpful to first discuss these cases in some detail.

### a). INS v. St. Cyr, 533 U.S. 289 (2001)

Any discussion of the case law in this area must begin with the Supreme Court's decision in *St. Cyr.* There, the Court held that the provisions of IIRIRA precluding aliens who were removable because of aggravated felony convictions from applying for discretionary relief from deportation did not apply to aliens who pled guilty to aggravated felonies prior to the statute's enactment. 533 U.S. at 326. The Court reasoned that IIRIRA's elimination of section 212(c) relief had an impermissible retroactive effect on St. Cyr and other defendants who had entered into plea agreements before IIRIRA's amendments to that section. The Supreme Court explained that "IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly attaches a new disability, in respect to transactions or considerations already past." *Id*. at 321 (citations and internal quotation marks

16

omitted).

### b).  *Ponnapula v. Ashcroft*, 373 F.3d 480 (3d Cir. 2004)

In *Ponnapula*, we also addressed 212(c) waivers, albeit in a slightly different context.  There, we were faced with the question of whether the application of IIRIRA § 304(b) would have an impermissibly retroactive effect on an alien who turned down a misdemeanor plea agreement and went to trial while former § 212(c) was still in effect and was convicted of a felony by the jury.  373 F.3d at 483.  Ponnapula had gone to trial relying on his counsel's advice that, even if he were found guilty, he would likely not receive a sentence that would render him ineligible for § 212(c) relief because of his very minor role in the offense.  *Id*.  We ultimately held that IIRIRA's repeal of discretionary relief from deportation was impermissibly retroactive with respect to aliens who turned down a plea agreement and elected to go to trial in reasonable reliance on the availability of such relief.  *Id*. at 489-90.

We also rejected the government's argument that *St. Cyr* rested on the existence of the *quid pro quo* of criminal plea agreements, and we distanced ourselves from those courts of appeals that have interpreted *St. Cyr* as requiring as much.  *Id*. at 488.  Specifically, we disagreed with other courts' *Landgraf* and *St. Cyr* analysis where those courts (1) failed to note *Landgraf*'s presumption against retroactivity; (2) required actual reliance on the prior statute; and (3) imposed an evidentiary burden of proving reliance.  *Id*. at 489-90, 492-93.  We concluded that, not only does the Supreme Court favor a "reasonable reliance" formulation over an "actual reliance" one, but also, the *Landgraf* line of cases demonstrates that courts are to concentrate on "the group to whose conduct the statute is addressed" rather than the party before the court.  *Id*. at 493. We concluded that, "a change in law can be found impermissibly

17

retroactive without establishing that some (or all) members of the group affected by the change in law relied on the prior state of the law." *Id*.

### c). *Faiz-Mohammad v. Ashcroft*, 395 F.3d 799 (7th Cir. 2005)

In *Faiz-Mohammad*, the Court of Appeals for the Seventh Circuit held that, "because § 241(a)(5) operates to impair rights [Mr. Faiz-Mohammad] possessed when he acted, namely his ability to apply for discretionary relief, [§ 241(a)(5)] may not be applied retroactively" to him. 395 F.3d at 810. The petitioner had reentered the United States and applied for adjustment of status before IIRIRA became effective. *Id*. at 809.[14] The court concluded that, even though he had no guarantee of a favorable decision in his application for adjustment of status, § 241(a) still constituted a "new disability" that did not exist prior to IIRIRA's passage. The court explained that "the second step of *Landgraf* does not address only the tak[ing] away or impair[ing] of vested rights; it also asks whether retroactive application would create[] a new obligation, impose[] a new duty, or attach[] a new disability." *Id*. at 810 (internal quotation marks omitted).

---

[14] The court reserved judgment on whether its retroactivity analysis would differ if the petitioner had applied for discretionary relief prior to IIRIRA's effective date. 395 F.3d at 809 n.10. In a subsequent opinion the Seventh Circuit resolved this issue. The court held that "§ 1231(a)(5) is not impermissibly retroactive when applied to an alien who reentered the United States before IIRIRA's effective date but did not apply for adjustment of status until after the Act became effective." *Labojewski v. Gonzalez*, 407 F.3d 814, 816 (7th Cir.) (2005); *accord Fernandez-Vargas v. Ashcroft*, 394 F.3d 881 (10th Cir. 2005), petition for cert. filed, 2005 WL 879510 (Apr. 12, 2005).

18

### d). *Sarmiento Cisneros v. Ashcroft*, 381 F.3d 1277 (11th Cir. 2004)

In *Sarmiento Cisneros*, the petitioner illegally reentered the United States and applied for adjustment of status after having been deported. 381 F.3d 1279. His application was based on his marriage to a United States citizen. *Id*. That all occurred before IIRIRA became effective. The petitioner's status was adjusted. *Id*. However, in the years that followed, the INS took a variety of adverse actions against him. In 2003, the BICE reinstated Sarmiento Cisneros's prior deportation order and issued a warrant of removal. *Id*. Because he had applied for discretionary relief before the effective date of IIRIRA, the court concluded that § 241(a)(5)'s elimination of the availability of discretionary relief attached a "new disability to a completed transaction." *Id*. at 1284. The court rejected the argument that § 241(a)(5)'s elimination of relief cannot be impermissibly retroactive because the relief is discretionary. *Id*. The court explained that *St. Cyr* directed a court to consider "an alien's reasonable reliance on the continued availability of discretionary relief from deportation when deciding whether the elimination of such relief has a retroactive effect." *Id*. Accordingly, the court held that § 241(a)(5) would have an impermissible retroactive effect if applied to the petitioner. *Id*. at 1285.

### e). *Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003)

In *Arevalo*, the petitioner illegally reentered the United States in 1990. 344 F.3d at 6. In August, 1990, the petitioner's father, a legal permanent resident, filed a visa petition on her behalf and it was later approved. *Id*. In March, 1996, Arevalo applied for an adjustment of status. Six years later, the INS notified Arevalo that it would not entertain her application. *Id*. The INS

19

subsequently invoked § 241(a)(5) to resurrect her prior deportation order and detained Arevalo pending removal. *Id*. The Court of Appeals for the First Circuit concluded that applying § 241(a)(5) would have an impermissible retroactive effect because Arevalo "already had filed for relief when Congress amended the statute. Discarding her application now would deprive her both of a right that she once had and of the reasonable expectation that she would have the opportunity to convince the Attorney General to grant her relief." *Id*. at 15.

### *f). Lattab v. Ashcroft*, 384 F.3d 8 (1st Cir. 2004)

In *Lattab*, however, the Court of Appeals for the First Circuit held that "application of § 241(a)(5) to deprive an alien who illegally reentered the country before IIRIRA's effective date of the ability to apply for relief for which the alien did not theretofore qualify is not impermissibly retroactive." 383 F.3d at 17. While Lattab had illegally reentered the United States prior to IIRIRA's effective date, he did not marry a United States citizen until 1999, and it wasn't until 2000 that he sought to have his status adjusted. *Id*. at 13. *Lattab* does not further our inquiry here, however, because the court noted that it was not deciding "the retroactive application of § 241(a)(5) to all aliens who reentered illegally before April 1, 1997, nor [was it deciding] the case of an alien illegally present in the United States who had a potential defense to deportation before IIRIRA took effect but had not yet applied for relief when IIRIRA eliminated that defense." *Id*.

### *g). Alvarez-Portillo v. Ashcroft*, 280 F.3d 858 (8th Cir. 2002)

The Court of Appeals for the Eighth Circuit has decided two cases on this issue. In *Alvarez-Portillo*, the court concluded

20

that, under the second prong of the *Landgraf* inquiry, the majority of the reinstatement statute may be applied retroactively to aliens illegally reentering the country prior to the statute's effective date; however, the provision of the statute precluding an alien subject to reinstatement from applying for any relief "under this chapter" may not. 280 F.3d 858. The petitioner there illegally entered the United States in 1993. He was subsequently deported, but reentered illegally 12 days later. *Id*. at 861. In 2001, he and his wife visited an INS district office to apply for an adjustment of his status to permanent resident alien, and the INS reinstated his 1993 deportation order.

The court explained:

> Alvarez-Portillo, who was deported and illegally reentered in late 1993, married a United States citizen in 1996, prior to the effective date of § 241(a)(5). At that time, long-standing INS practice created a reasonable expectation that he could defend against later deportation or removal by seeking a discretionary adjustment of status to lawful permanent resident.

*Id*. at 867. The court expressly rejected the contention that § 241(a)(5) had no impermissible retroactive effect because the illegal reentrant could have applied for adjustment of status before IIRIRA's enactment. Instead, the court concluded that § 241(a)(5)'s "may not apply for any relief under this chapter" clause attaches new legal consequences to Alvarez-Portillo's prior actions. *Id*. Under the prior law Alvarez-Portillo could have filed for a discretionary adjustment of status or sought the adjustment as a defense to a subsequent deportation proceeding. "He chose to wait, and § 241(a)(5) as applied by the INS has now deprived him of that defense." *Id*.

21

### h). *Lopez-Flores v. Dept. of Homeland Security*, 387 F.3d 773 (8th Cir. 2004)

In *Lopez-Flores*, the petitioner had illegally reentered the United States prior to IIRIRA's enactment and in 1995 filed an application for work authorization with his sponsoring employer. Congress enacted IIRIRA and § 241(a)(5) while that application was pending. The INS ultimately approved Lopez-Flores' work petition, but refused to adjust his status. Instead, it reinstated the prior order of deportation. *Id*. at 774-75.

On appeal, the government argued that the case was distinguishable from *Alvarez-Portillo* because obtaining an employment-based visa is a much more complicated and lengthy process than receiving an immediate relative visa. The court rejected that distinction because it "has no bearing on the reasonableness of Lopez-Flores's expectation that the opportunity to pursue such a defense would be available to him in later instituted deportation." *Id*. at 776. The court continued: "[h]ad Respondents shown that Lopez-Flores's application for adjustment of status was utterly without merit or that such relief was unavailable to him as a matter of law prior to the enactment of § 241(a)(5), we would conclude that any retroactive application of § 241(a)(5) was harmless error." *Id.* The court ultimately concluded that Lopez-Flores had the right to renew his application for adjustment of status in a subsequent deportation proceeding. *Id*. at 776-77.

### I). *Ojeda-Terrazas*, 290 F.3d 292 (5th Cir. 2002)

The court in *Ojeda-Terrazas* held that the reinstatement statute applies retroactively to aliens who illegally reentered the country prior to IIRIRA's effective date. 290 F.3d 292. The petitioner there had not applied for, nor had he argued that he was eligible to apply for, any form of discretionary relief.

22

Relying substantially on *St. Cyr*, the court determined that he therefore "had no reasonable expectation of having a hearing before an immigration judge rather than an INS official when he illegally reentered the United States in 1991." *Id*. at 301-02.

### j). *Velasquez-Gabriel v. Crocetti*, 263 F.3d 102 (4th Cir. 2001)

In *Velasquez-Gabriel*, the court also concluded that § 241(a)(5) did not operate in an impermissibly retroactive manner when applied to an alien who illegally reentered the United States prior to the effective date of the statute. Petitioner's wife filed a petition on his behalf and petitioner filed an application to adjust his status based on his marriage to a U.S. citizen seven months after IIRIRA took effect (and 21 months after his marriage to a U.S. citizen). 263 F.3d at 104. The INS denied petitioner's application and reinstated his prior order of deportation pursuant to § 241(a)(5). *Id*.

The court relied heavily on *St. Cyr*. The court first rejected the government's contention that Velasquez-Gabriel could not prevail because the relief he was seeking was discretionary. *Id*. at 108. Next, the court explained that in *St. Cyr*, the Supreme Court "heavily relied on two factors not present here: (1) aliens like St. Cyr had a significant likelihood of receiving the relief they sought under the old law and (2) they almost certainly relied upon that likelihood to their detriment." *Id*. (internal quotation marks omitted). The court determined that Velasquez-Gabriel had not shown either a reasonable likelihood of success under pre-IIRIRA law, nor a detrimental reliance on pre-IIRIRA law. *Id*. at 108-09. The court noted that Velasquez-Gabriel's sole reliance argument was that he and his wife relied on his ability to adjust his status in the United States when they got married. *Id*. at 109.

23

Citing *Hughes Aircraft*, 520 U.S. 939, the court noted that the fact that petitioner "did not detrimentally rely on prior law may not, however, foreclose a claim that § 241(a)(5) nonetheless operates retroactively." *Id.* However, the court concluded that it need not decide that question because there was "a far simpler reason compelling [the court's] conclusion that the application of § 241(a)(5) is not impermissibly retroactive in this case: not until well after § 241(a)(5) took effect did [petitioner] apply to adjust his status or did his wife file for a visa petition on his behalf." *Id.*

### E. Dinnall's Claim.

As previously noted, Dinnall maintains that § 241(a)(5) is impermissibly retroactive because retroactive application of the statute "would impair rights he possessed when he acted." Specifically, he argues that (1) his prior deportation order can no longer be reopened or reviewed, and (2) he can no longer apply for discretionary relief such as voluntary departure.

We need not spend much time analyzing Dinnall's first contention because, as Dinnall's counsel conceded at argument, prior to IIRIRA's effective date, Dinnall could not reopen the deportation order either. Indeed, the regulations in effect when Dinnall illegally reentered the United States unequivocally prohibited Dinnall from moving to reopen his deportation proceedings. Those regulations provided, in relevant part:

> A motion to reopen . . . shall not be made by or on behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States.

8 C.F.R. § 3.2 (1987).

24

Dinnall's second contention – that § 241(a)(5) impairs his right to apply for discretionary relief such as voluntary departure – is more troubling. We note at the outset that it is clear under *St. Cyr* that our analysis is not altered because voluntary departure is a discretionary form of relief rather than a defense to removal. As the Court noted there, we must consider an "alien's reasonable reliance on the continued availability of discretionary relief from deportation when deciding whether the elimination of such relief has a retroactive effect," since "[t]here is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." *St. Cyr*, 533 U.S. at 324, 325; *accord Sarmiento Cisneros*, 381 F.3d at 1284; *Velasquez-Gabriel*, 263 F.3d at 108.

Dinnall would have to leave the United States whether he was deported or granted voluntary departure. Therefore, the distinction in *St. Cyr* between facing possible deportation and certain deportation may at first seem inapplicable here. There is, however, a crucial distinction that our analysis cannot ignore. Voluntary departure is not tantamount to deportation. Rather, it is a form of relief granted in lieu of deportation. *See* 8 C.F.R. 244.1 (1987). Accordingly, the consequences for Dinnall if deported differ substantially from the consequences that he would face if granted voluntary departure. The law when Dinnall illegally reentered the country barred aliens such as Dinnall who departed the United States under an order of deportation from returning to the United States for five years. Bill Ong Hing, *Handling Immigration Cases*, § 9.21, at 310 (1985). However, no such time bar was erected against aliens who were granted voluntary departure. Such an alien could return to the United States at any time so long as he or she was otherwise eligible to enter as an immigrant or nonimmigrant. *Steel on Immigration Law*, § 14.48, at 452. If § 241(a)(5) applies retroactively to Dinnall, he would forever be precluded from applying for this discretionary relief. That sanction

25

"attaches a new disability" to Dinnall "[with] respect to transactions or considerations already past." *See St. Cyr*, 533 U.S. at 321; *accord Alvarez-Portillo*, 280 F.3d at 867.

Moreover, the government concedes that Dinnall's illegal reentry would not render him completely ineligible for this form of discretionary relief. Rather, the government maintains that his illegal reentry would "constitute[] an 'adverse factor' in the immigration judge's discretionary determination." Government brief at 14; *see Lopez-Flores*, 387 F.3d at 776 ("Had Respondents shown that Lopez-Flores's application for adjustment of status was utterly without merit or that such relief was unavailable to him as a matter of law prior to the enactment of § 241(a)(5), we would conclude that any retroactive application of § 241(a)(5) was harmless error."). Although Dinnall has no guarantee of a favorable decision on his voluntary departure application, because § 241(a)(5) constitutes a "new disability" that did not exist prior to IIRIRA's passage, he nevertheless had a reasonable expectation of an avenue of relief before IIRIRA was enacted that he no longer has. *See St. Cyr.*, 533 U.S. at 321.

The government argues that *St. Cyr* is "premised on a reliance theory," since "[t]he Supreme Court found that application of the statutory bars had a retroactive effect *only* as to those aliens who actually pled guilty to their disqualifying crimes and who were otherwise eligible for such relief at the time of their plea." Government brief at 20 (emphasis in original). Citing to several post *St. Cyr* decisions, the government explains that, in those cases, the courts "found ineligible for Section 212(c) relief those aliens who were convicted of their crimes *prior to enactment* of the bars but who did not fall within *St. Cyr*'s holding because they did not plead guilty, and therefore did not rely on the availability of immigration relief." *Id*. (emphasis in original).

26

However, as Dinnall points out, the government's argument improperly implies that Dinnall must demonstrate actual reliance on pre-IIRIRA law to show the impermissible retroactive effect of § 241(a)(5). That is inconsistent with our decision in *Ponnapula*.[15] *See Ponnapula*, 373 F.3d at 491-94.[16]

---

[15]During oral argument, the government asserted that *Ponnapula* was wrongly decided and should not be followed because it is not consistent with *Landgraf*. We are, however, bound by *Ponnapula* and its interpretation of Supreme Court precedent. *See Auguste v. Ridge*, 395 F.3d 123, 149 (3d Cir. 2005) (citing Third Circuit Internal Operating Procedure 9.1).

[16]In *Olatunji v. Ashcroft*, 387 F.3d 383, 394 (4th Cir. 2004), the court also concluded that subjective reliance on prior law did not factor into its retroactivity analysis:

> Whether the particular petitioner did or did not subjectively rely upon the prior statute or scheme has nothing whatever to do with Congress' intent . . . It is one thing to indulge the supportable presumption that Congress intends its enactments not to operate retroactively; it is another altogether to indulge the quite different, and unsupported and unsupportable, presumption that Congress so intends, but only where the particular petitioning party can prove that he subjectively relied on the prior statute to his detriment. In other words, where Congress has apparently given no thought to the question of retroactivity whatever, there is no basis for inferring that Congress' intent was any more nuanced than that statutes should not be held to apply retroactively. Anything more, in the face of

27

In *Ponnapula* we found that a requirement of *actual reliance* erects "too high a barrier to triggering the presumption against retroactivity . . . [and] has the effect of treating *Landgraf* as establishing a presumption *in favor* of retroactive application." *Id*. at 491. (emphasis in original). Rather surprisingly, the government fails to even mention *Ponnapula* in its brief. Thus, the government does not mention that in *Ponnapula* we rejected almost all of the post-*St. Cyr* precedent it relies upon to counter Dinnall's *Landgraf* analysis.[17] *See Ponnapula*, 373 F.3d at 488-89 ("our interpretation of *Landgraf* and its progeny differs somewhat from these Courts . . . we believe that other Courts of Appeals have perhaps misapplied *Landgraf* in this area.").

*Ponnapula* also instructs us not to "focus[] attention on the particular facts and circumstances of the party before the court" because that was not the focus in *St. Cyr*. *Id*. at 491, 492. Instead, in *St. Cyr*, "[t]he discussion of the *quid pro quo* in criminal plea agreements is directed at establishing, as a general matter, the reasonable reliance of this class of aliens, irrespective of the course of St. Cyr's own plea negotiations." *Id*. Accordingly, as we focused our attention in *Ponnapula* on the class of aliens who decided to proceed to trial and were convicted prior to the effective date of IIRIRA's repeal of § 212(c), *id*. at 494, `here, we focus our attention on the class of aliens who chose to illegally reenter the United States prior to

---

complete congressional silence, is nothing but judicial legislation.

[17]The cases the government cites to, whose application of *Landgraf* we disavowed in *Ponnapula*, include *Rankine v. Reno*, 319 F.3d 93 (2d Cir. 2003); *Chambers v. Reno*, 307 F.3d 284 (4th Cir. 2002); *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121-22 (9th Cir. 2002); and *Brooks v. Ashcroft*, 283 F.3d 1268, 1274 (11th Cir. 2002).

the enactment of § 241(a)(5), and who at the time of their reentry, would have been eligible for voluntary departure. It is not unreasonable to assume that many of these aliens may well have reentered the country with the understanding that they might be eligible for some form of discretionary relief. *See e.g.*, *Lopez-Flores*, 387 F.3d at 774-75 (after illegal reentry alien sought discretionary relief of adjustment of status due to approved work visa application); *Arevalo*, 344 F.3d at 6 (after illegal reentry alien sought discretionary relief of adjustment of status based on grant of family visa petition); *Alvarez-Portillo*, 280 F.3d at 861-62 (after illegal reentry alien sought discretionary relief of adjustment of status due to marriage to a U.S. citizen). Section 241(a)(5) "can be found impermissibly retroactive without establishing that some (or all) members of the group affected by the change in law relied on the prior state of the law;" *Ponnapula*, 373 F.3d at 493, therefore, our inquiry is not resolved by focusing on whether Dinnall reentered with the possibility of this relief in mind. Moreover, even if we were to conclude that Dinnall's interest in obtaining voluntary departure at the time of illegal reentry was attenuated, "the fact that an interest may have been attenuated . . . has had little salience in the Supreme Court's analysis of other retroactivity questions." *Id*. at 495.

We therefore hold that applying § 241(a)(5) to Dinnall has an impermissibly retroactive effect.

### III. CONCLUSION

For the reasons set forth above, we will grant Dinnall's Petition for Review and vacate the BICE's order reinstating Dinnall's order of deportation.

29