**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2330
_____

MANUEL DE JESUS MELENDEZ HERNANDEZ,
a/k/a Manuel De Jesus Melendez-Hernandez,
a/k/a Manuel De Jesus Melendez,
a/k/a Manuel D. Melendez, a/k/a Manuel De Jesus Hernandez,
a/k/a Manuel De Jesus Herna, a/k/a Rodrigo Alvarez,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A078-046-922)
Immigration Judge: Honorable Mirlande Tadal

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 27, 2017
Before: VANASKIE, COWEN and NYGAARD, Circuit Judges

(Opinion filed: November 2, 2017)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Manuel de Jesus Melendez Hernandez (Melendez), a native and citizen of El Salvador who is proceeding pro se, petitions for review of the Board of Immigration Appeals' (BIA) final order of removal. For the following reasons, we will grant the petition for review in part, deny it in part, and remand to the BIA.

Melendez arrived in the United States in 1999. In 2001, he was ordered removed from the United States because he failed to appear in Immigration Court. Later, Melendez pleaded guilty to giving false information. He came to the attention of immigration authorities after he was arrested for violating the terms of his probation. In 2006, Melendez was removed from the United States. He returned to the United States most recently in 2015. In 2016, Melendez was arrested for possession of marijuana and providing false information. The Government reinstated Melendez's prior removal order pursuant to 8 U.S.C. § 1231(a)(5). He sought withholding of removal under 8 U.S.C. § 1231(b)(3) and protection under the Convention Against Torture (CAT).[1] See 8 C.F.R. §§ 1241.8(e), 1208.31(e) (providing that an alien whose prior order of removal has been reinstated may seek withholding of removal based on a reasonable fear of persecution or torture). In his application, Melendez alleged that he would be physically harmed or killed if removed to El Salvador because he formerly was a member of the MS-13 gang

---

[1] Melendez did not assert that he is eligible for asylum. In any event, we recently held that aliens, like Melendez, subject to reinstated removal orders, are ineligible to apply for asylum. Cazun v. Att'y Gen., 856 F.3d 249, 251 (3d Cir. 2017).

and because the gang believes that he cooperated with the FBI.

An Immigration Judge denied relief and Melendez appealed. The BIA dismissed the appeal. With respect to withholding under § 1231(b)(3), the Board concluded that "former gang members" was not a cognizable social group and that, even if it was, Melendez failed to establish that his membership in that group was a central reason for the harm alleged.[2] As to CAT protection, the BIA stated, inter alia, that Melendez's fear "that he could be tortured by MS-13 gang members and, in turn, a public official would consent, acquiesce, or be willfully blind to such harm" was "based upon a speculative chain of events." Melendez filed a timely petition for review.[3]

For withholding of removal to a particular country, an applicant must establish by a "clear probability" that his "life or freedom would be threatened" in the proposed country of removal "because of [his] race, religion, nationality, membership in a particular social group, or political opinion." § 1231(b)(3); see also Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003). When, as here, the withholding application

---

[2] The Board faulted Melendez for not identifying a protected ground that would serve as the basis for his claims. We disagree with this assessment. Melendez's application explained that he "no longer wanted to be in a gang" and that gang members "will order [his] murder" because they "believe that [he] is a snitch." (Administrative Record (A.R.) 170).

[3] We have jurisdiction under 8 U.S.C. § 1252(a)(1). See Dinnall v. Gonzales, 421 F.3d 247, 251 n.6 (3d Cir. 2005) (exercising jurisdiction over petition for review of reinstatement order "[b]ecause an order reinstating a prior removal order is 'the functional equivalent of a final order of removal'") (quoting Arevalo v. Ashcroft, 344 F.3d 1, 9-10 (1st Cir. 2003)).

3

is based on membership in a particular social group, "an applicant must establish both that the group itself is properly cognizable as a 'social group' within the meaning of the statute, and that his membership in the group is 'one central reason' why he was or will be targeted for persecution." Gonzalez-Posadas v. Att'y Gen., 781 F.3d 677, 684-85 (3d Cir. 2015).

The BIA has explained that a "particular social group" must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." In re M-E-V-G-, 26 I. & N. Dec. 227, 237 (BIA 2014). In explaining these requirements, the Board stated that "[s]ocial group determinations are made on a case-by-case basis[,]" id. at 251, noted the "fact-specific context of an applicant's claim for relief[,]" id. at 241, and cautioned against "a blanket rejection of all factual scenarios involving gangs." Id. at 251. Here, however, the Board concluded that former gang membership was not a cognizable particular social group. But the Board did not discuss the three particular social group elements outlined in M-E-V-G- or offer *any* substantive analysis in support of its conclusion. See Filja v. Gonzales, 447 F.3d 241, 256 (3d Cir. 2006) ("[t]he BIA is not required to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."). Notably, and troublingly, in defining Melendez's putative social group, the Board did not consider whether Melendez's perceived cooperation with law enforcement affected his claim. See

4

Garcia v. Att'y Gen., 665 F.3d 496, 504 (3d Cir. 2011) (concluding that the petitioner,

who had testified against gang members, was a member of a particular social group, as

she had "the shared past experience of assisting law enforcement against violent gangs

that threaten communities in Guatemala" and that experience constituted "a characteristic

that members cannot change because it is based on past conduct that cannot be undone.").

Because it is not our role to examine the attributes of Melendez's putative social group in

the first instance, we will remand to the BIA for further explanation.[4] See Serrano-

Alberto v. Att'y Gen., 859 F.3d 208, 212 n.2 (3d Cir. 2017) (observing that "[w]hether a

social group constitutes a PSG, and is thus cognizable under the … INA[,] … is a

continuously developing question of law and one that must be answered on a case-by-

case basis.").

The Board also stated that Melendez failed to establish that a "cognizable

---

[4] We note that the IJ did "find[] that there is no evidence in the record of El Salvadoran society viewing 'former gang members' as meaningfully distinguished from the rest of El Salvadoran society." (A.R. 38). Specifically, the IJ stated that "[e]ven if [Melendez's social group] were distinct from the perspective of the purposed persecutors here, … there is no evidence to suggest that the group is viewed as meaningful[ly] distinct by society in general." (A.R. 38-39). But these conclusions were not specifically adopted by the BIA, which simply stated – in a conclusory fashion – that there was no cognizable social group in play. See Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003) ("only if the BIA expressly adopts or defers to a finding of the IJ, will we review the decision of the IJ."). In any event, the IJ did not grapple with Melendez's alleged cooperation with the FBI either. Furthermore, we have not yet determined whether the BIA's interpretation of the term "particular social group" in M-E-V-G- (and in particular its conclusion that "a group's recognition for asylum purposes is determined by the perception of the society in question, rather than by the perception of the persecutor") is entitled to Chevron deference.

5

protected ground is a central reason for the claimed persecution." (A.R. 2). "For a protected characteristic to qualify as 'one central reason,' it must be an essential or principal reason for the persecution; withholding of removal may not be granted when the characteristic at issue 'played only an incidental, tangential, or superficial role in persecution.'" Gonzalez-Posadas, 781 F.3d at 685 (quoting Ndayshimiye v. Att'y Gen., 557 F.3d 124, 130 (3d Cir. 2009)). Here, Melendez alleged that he will be targeted because of his former membership in the MS-13 gang and because the gang believes that he cooperated with the FBI. For instance, he testified that he joined the gang when he was 18 years old and that, upon his return to El Salvador in 2006, he was recognized as a former gang member because of his tattoos. (A.R. 80, 83). MS-13 members forced him to rejoin the gang under threat of death. (A.R. 83). In 2014, Melendez "decided that [he] didn't want to be with [the gang] anymore" and was shot in the leg by MS-13 members because he failed to attend a meeting. (A.R. 85). He returned to the United States in 2015, but the gang has continued to look for him in El Salvador. (A.R. 85-86). While in immigration custody, FBI agents approached Melendez seeking information about the location of another gang member. (A.R. 86-87). Another detainee discovered that Melendez had spoken with the FBI, and reported Melendez to other MS-13 gang members. (A.R. 87-88). Under these circumstances, we conclude that substantial evidence does not support the Board's conclusion that Melendez's gang ties were not "at least one central reason" for the harms he fears. See Oliva v. Lynch, 807 F.3d 53, 60 (4th Cir. 2015) ("the BIA drew too fine a distinction between Oliva's status as a former

6

member of MS-13 and the threats to kill him for breaking the rules imposed on former members.").

We discern no error, however, in the BIA's disposition of Melendez's claim for relief under the CAT. Substantial evidence supports the conclusion that Melendez did not meet his burden of establishing that he is likely to be tortured "by or at the instigation of or with the consent or acquiescence of" an El Salvadorian public official. 8 C.F.R. § 1208.16(c)(2); § 1208.18(a)(7); Sevoian v. Ashcroft, 290 F.3d 166, 174–75 (3d Cir. 2002). In support of the CAT claim, Melendez asserted that word of his alleged cooperation with the FBI will make its way to current MS-13 members in El Salvador, that those current members will recognize Melendez when he returns, and that public officials will torture him or will acquiesce in torture inflicted on him by the gang members. Although the record contains evidence of government corruption, police brutality, and gang violence, as well as Melendez's prior run-ins with the gang and the police, we agree that Melendez failed to establish that each link in that hypothetical chain of events is more likely than not to occur. See In re J-F-F-, 23 I. & N. Dec. 912, 918 & n.4 (A.G. 2006). In particular, Melendez only speculates that officials will torture him or will be willfully blind to his torture by MS-13 gang members. See Denis v. Att'y Gen., 633 F.3d 201, 218 (3d Cir. 2011) (stating that alien's "unsupported speculation" about what he believed would happen to him if removed "does not rise to the level of proof necessary to demonstrate that he will more likely than not be singled out for torture."). Accordingly, we are not compelled to overrule the BIA's denial of relief under the CAT.

See INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

For the foregoing reasons, we will grant the petition for review in part, deny it in part, and remand the case for further proceedings consistent with this opinion. In particular, we will deny the petition with respect to Melendez's CAT claim, but will grant the petition as to the withholding of removal claim and remand to the Board for further explanation of its particular social group determination.