NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1484
_____

EDVIN AROLDO SALAZAR-CORDERO,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA

_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(No. A206-508-336)
Immigration Judge: Dinesh C. Verma
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 16, 2020

Before: AMBRO, BIBAS and ROTH, Circuit Judges

(Opinion filed: March 2, 2021)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, Circuit Judge,

Petitioner Edvin Aroldo Salazar-Cordero seeks our review of the dismissal by the Board of Immigration Appeals ("BIA") of his appeal from the decision of an Immigration Judge ("IJ") denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We deny the petition for review.

**I.**

Edvin Salazar-Cordero is a 28-year-old Guatemalan citizen who entered the United States in May of 2013. The Department of Homeland Security began removal proceedings shortly thereafter, charging Salazar-Cordero with being removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I). At a hearing before an IJ, Salazar-Cordero conceded removability and filed an application for asylum, withholding of removal, and protection under CAT based on his membership in a particular social group, namely "young Guatemalan males that have rejected recruitment by criminal organizations." A.R. 60.

In support of his application, Salazar-Cordero testified that, while he was in Guatemala, two corrupt police officers allied with the Maras-18 gang asked him on two occasions to store drugs for them in a warehouse at the ranch where he worked. He testified that Maras-18 controlled the town he was living in, Concepción Las Minas, stating that "[Maras-18] commands things, it runs things." A.R. 138. The uniformed officers first approached him at the ranch, identifying him by name, and demanded that he store a drug package they had in a barn on the property—at one point putting a gun to his chest. After Salazar-Cordero's refusals, the officers told him, "[i]t's not going to be long until we meet again, until we come back for you." A.R. 144.

After the interaction at the ranch, Salazar-Cordero tried to report this interaction to the Chief of Police but was laughed at in response. Weeks later, the same officers, this time in plain clothes, approached him as he was walking home from his sister's house. The officers tried to force him into their car and, when he resisted, they proceeded to beat and kick him on the ground until a stranger intervened. The officers left him with a warning that if they caught him again, "that's going to be the last of you." A.R. 154. After spending multiple days in the hospital, Salazar-Cordero retreated to his aunt's house. While there, the police officers came to the house and told his aunt that they were looking for him. Several days later, he fled to the United States. When crossing the border, Salazar-Cordero told immigration officials that he feared going back to his country because of the corrupt police officers. Salazar-Cordero testified he believed that the officers chose him among the other ranch hands "because I'm a young person and a man." A.R. 144. While the IJ identified inconsistencies in this testimony, namely Salazar-Cordero's failure previously to express fear of returning and his failure to mention a gun in his previous statements, he found it, overall, to be credible.

In March of 2018 the IJ found Salazar-Cordero removable as charged and denied him the requested relief because, the IJ concluded, he had not suffered past persecution and did not have a well-founded fear of future persecution on account of his membership in a particular social group. The IJ reasoned that: (1) the isolated attacks were not persecution; (2) his proposed social group of "young Guatemalan males that have rejected recruitment by criminal organizations" was not cognizable; and (3) even if the proposed social group was cognizable, Salazar-Cordero failed to establish any nexus between that group and the

3

persecution he claims to have suffered. The IJ found it "likely that[,] no matter who the police may have encountered working on the ranch on that particular day[,] [those persons] would have been a target regardless of whether they were young, old, or otherwise[,] as the police seemed most interested in the warehouse and utilizing that warehouse for their own illicit purposes." A.R. 64. The IJ also denied Salazar-Cordero CAT protection because he did not establish that he is more likely than not to be tortured by or with the acquiescence of a public official upon a return to Guatemala. The BIA affirmed and Salazar-Cordero filed a timely petition for review.

## II.

The BIA had jurisdiction to review the IJ's removal decision under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). *See Dinnall v. Gonzales*, 421 F.3d 247, 251 n.6 (3d Cir. 2005) (exercising jurisdiction over appeal from an order reinstating a prior removal because such an order is "the functional equivalent of a final order of removal"). Because only the BIA can issue a final order of removal, our jurisdiction is limited to review of the BIA's decision. *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 177 (3d Cir. 2020). However, "we also review the IJ's decision to the extent it is adopted, affirmed, or substantially relied upon by the BIA." *Id.*

## III.

### A.    Asylum

To be eligible for asylum, a petitioner must show that he is a "refugee" under 8 U.S.C. § 1101(a)(42). "One way of doing so is to show 'a well-founded fear of persecution

4

on account of . . . membership in a particular social group[.]'" *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 543–44 (3d Cir. 2018). To satisfy this standard, a petitioner must establish the following elements: "(1) a particular social group that is legally cognizable; (2) membership in that group; (3) a well-founded fear of persecution, which must be subjectively genuine and objectively reasonable; and (4) a nexus, or causal link, between the persecution and membership in the particular social group." *Id.* at 544.

"We review the BIA's legal conclusion as to the existence of a particular social group de novo while reviewing its underlying factual conclusions for substantial evidence," *Guzman Orellana*, 956 F.3d at 177, meaning we must "uphold the agency's determination unless the evidence would compel any reasonable fact finder to reach a contrary result," *Sesay v. Attorney General*, 787 F.3d 215, 220 (3d Cir. 2015) (citation omitted).

To have a cognizable particular social group, an applicant must "establish that the group [at issue] is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *S.E.R.L.,* 894 F.3d at 540. Salazar-Cordero has failed to meet this burden because the group is not sufficiently particular, meaning it must have "discrete and . . . definable boundaries" that are not "amorphous, overbroad, diffuse, or subjective, . . . so as to provide a clear standard for determining who is a member of it." *S.E.R.L.*, 894 F.3d at 552. "[N]ot every immutable characteristic is sufficiently precise to define a particular social group." *Id.*

The proposed group of "young Guatemalan males that have rejected recruitment by criminal organizations" is simply too broad and amorphous to satisfy these requirements.

"Criminal organizations" could cover a large, diverse group of entities from gangs to corrupt police departments to drug cartels. "Recruitment" is similarly undefined. Likewise, "young" is an open-ended category without clear boundaries.

This conclusion is consistent with other circuits' case law on this issue. *See, e.g.*, *Rodas-Orellana v. Holder*, 780 F.3d 982, 991–93 (10th Cir. 2015) (proposed group of "Salvadoran males threatened and actively recruited by gangs . . . who resist joining because they oppose the gangs" lacked social distinction); *Zaldana Menijar v. Lynch*, 812 F.3d 491, 498–99 (6th Cir. 2015) ("'Salvadoran male youth . . . who were forced to actively participate in violent gang activities for the majority of their youth and who refused to comply with demands to show their loyalty through increasing violence' . . . lacked social distinction." (citation omitted)); *Mendez-Barrera v. Holder*, 602 F.3d 21, 25, 27 (1st Cir. 2010) (determining that "young [Salvadoran] women recruited by gang members who resist such recruitment" lacked particularity because "[t]here are, for example, questions about who may be considered 'young,' the type of conduct that may be considered 'recruit[ment],' and the degree to which a person must display 'resist[ance]'").

**B.    Withholding of Removal**

With respect to withholding of removal under 8 U.S.C. § 1231(b)(3), "an alien must establish a clear probability of persecution, *i.e.*, that it is more likely than not . . . that s/he would suffer persecution upon returning home." *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d Cir. 2011) (internal quotation marks and citation omitted). Because this standard "is more demanding than that governing eligibility for asylum, an alien who fails to qualify for asylum is necessarily ineligible for withholding of removal." *Id.* Because

6

he is not eligible for asylum, Salazar-Cordero necessarily fails on his application for withholding of removal.

### C. CAT

To qualify for CAT protection, an alien must show that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." *Kamara v. Att'y Gen.*, 420 F.3d 202, 212–13 (3d Cir. 2005) (citation omitted). This torture must happen at the hands of those acting with the consent or acquiescence of public officials. 8 C.F.R. § 1208.18(a)(7). Torture is "an extreme form of cruel and inhuman treatment." 8 C.F.R. § 1208.18(a)(2).

The isolated mistreatment that Salazar-Cordero suffered at the hands of the two police officers does not seem to reach that level. We do not dispute that the treatment Salazar-Cordero faced was appalling, and if this treatment were expected to continue at the hands of the police it would be a stronger case for CAT protection. But the evidence as it currently stands tracks more closely with the type of violence generally associated with criminal enterprise than it does torture.

Salazar-Cordero has also not established that it is more likely than not he would continue to be mistreated if returned to Guatemala. As the IJ explained, it appears that these two police officers were operating at the behest of a local gang and approached Salazar-Cordero solely because he had access to a warehouse at his workplace where they wished to store drugs. There is no indication that they intended to target him specifically once he left that job or that they would target him again if he were to return to the country.

\* \* \* \* \*

7

In sum, Salazar-Cordero is not eligible for asylum or withholding relief because he has not shown that he is a member of a cognizable particular social group. He is also ineligible for CAT relief because he has not proven that he will be tortured upon his return to Guatemala. We thus deny his petition for review.